## 64375. McADOO v. THE STATE.

BIRDSONG, Judge.

Appellant John Thomas McAdoo appeals from his conviction in the Superior Court of Clayton County of trafficking in cocaine, and mandatory sentence of five years' imprisonment and fine of $50,000 under the Georgia Controlled Substances Act (Code Ann. § 79A-811 (j)). We affirm.

The facts as established by the record show that on August 12, 1981, appellant, while deplaning from a flight arriving from Ft. Lauderdale, Florida in Hartsfield Atlanta International Airport, was observed by Paul J. Markonni, senior agent of the airport detail of the federal Drug Enforcement Administration (DEA). Markonni was on duty attempting to identify and apprehend domestic drug couriers and appellant attracted his attention because appellant's behavior was characteristic of many of the indicia of the so-called "drug courier profile." Ft. Lauderdale being a major source for the importation and distribution of narcotics, incoming flights from that city were routinely observed. Markonni noticed appellant because of an exchange of glances and nod of the head between appellant and another passenger who was some distance away. The two appeared to be traveling together but trying to conceal that fact. Watching

appellant as he checked in for a connecting flight to Detroit, Markonni saw him tender two tickets and receive two boarding passes from the ticket agent.

Markonni identified himself to the ticket agent and examined the tickets presented by appellant. The tickets were round trip from Detroit to Ft. Lauderdale, paid in cash and issued in the names of Raymond and Jeffrey Cork, and indicated a stay in Ft. Lauderdale of just over eighteen hours. A call back number listed for Ft. Lauderdale was the Airport Holiday Inn, and the room number shown had been rented to John McAdoo of Pontiac, Michigan for two parties. The room bill and charges for four long distance calls to Michigan had been paid in cash. McAdoo, who was dressed in jogging shorts and a tee shirt, did not appear to be traveling for business.

Based on this information and his twelve years' training and experience with DEA, Markonni deduced that appellant warranted further investigation. Markonni, accompanied by another agent who stayed apart and did not speak, approached appellant, presented his credentials, advised him he was a federal officer and asked to speak with him for a minute, to which appellant agreed. Both agents were dressed in casual clothes which hid their weapons. Markonni spoke in a normal conversational tone of voice trying "to attract as little attention to what we do as possible to avoid any kind of scene or disturbance on the concourse." Appellant was not touched and no commands were made or implied. Appellant voluntarily surrendered an envelope containing two passenger copies, two boarding passes and one baggage claim check. Appellant identified himself as John McAdoo, stating that he was traveling with someone else and produced his driver's license upon request. He admitted that his name was not Cork as shown on the tickets, and told Markonni that his companion was named Richard Glover.

At that point Markonni returned appellant's tickets and driver's license and explained that he was a narcotics officer looking for drugs going through the airport. He asked appellant if he were carrying any drugs on his person or in the bag he had checked. When appellant replied in the negative, Markonni told him that the circumstances looked suspicious and asked if he would mind cooperating and allow the agents to search him. Appellant said he would not mind but he was not carrying any drugs or narcotics and would rather be searched some place more private. As the agents led appellant to an empty airline office, he asked to go to the bathroom. Markonni told him to wait just a few minutes because if he were not carrying anything it would be a quick search and then he could do anything he wanted to.

Upon reaching the office, Markonni read appellant his Miranda rights and appellant said that he understood them. Markonni

conducted a patdown search; in the area of appellant's lower abdomen inside his shorts he felt a bulge and "could hear plastic when [he] moved [his] thumb back and forth." A plastic bag was removed from appellant's clothing which Markonni suspected contained about two ounces of cocaine, and appellant was placed under arrest. Appellant consented to a search of his suitcase and a small amount of cocaine was also found therein. Appellant did not appear to be under the influence of drugs or alcohol, carried on an intelligent conversation and seemed a person of average intelligence. The entire encounter, from initial approach to arrest, lasted no more than six or seven minutes.

1. Appellant argues that the trial court erred in denying his motion to suppress evidence seized as a result of his illegal detention and search. We do not agree.

The constitutionality of such a stop by an airport DEA agent based upon an "articulable suspicion" that the defendant was carrying illegal narcotics was first considered by this court in *State v. Reid,* 149 Ga. App. 685, 686 (255 SE2d 71), which held that because Reid's behavior fit the drug courier profile compiled by the DEA in a number of respects and he consented to a search after being approached, there was probable cause for the search under Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889). The United States Supreme Court reversed, holding that the evidence was insufficient to justify a "Terry stop." On remand this court merely affirmed the trial court's grant of the motion to suppress without discussion of any seizure question. *State v. Reid,* 156 Ga. App. 78 (274 SE2d 164). This issue was subsequently treated by the Georgia Supreme Court on grant of certiorari in *State v. Reid,* 247 Ga. 445 (276 SE2d 617) (U. S. cert denied). Based on United States v. Mendenhall, 446 U. S. 544 (100 SC 1870, 64 LE2d 497), that court determined that there was "nothing in the record to suggest that the defendant had any objective reason to believe that he was not free to end the conversation and proceed on his way and for that reason we conclude that the agent's initial approach to him was not a seizure." *State v. Reid,* supra, p. 450.

If there is no seizure, there is no constitutional violation. The unresolved question now confronting us is what constitutes a seizure. Under Mendenhall, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such a restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and

personal security of individuals.' [Cit.] As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." Mendenhall, supra, pp. 553-554.

In United States v. Berry, 670 F2d 583 (5th Cir. 1982), a recent case involving strikingly similar facts and the same DEA agent, the Fifth Circuit Court of Appeals sitting en banc examined the issue of whether *any* airport stop must be held a seizure. The majority observed initially "that Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: [1] communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, [2] brief 'seizures' that must be supported by reasonable suspicion, and [3] full-scale arrests that must be supported by probable cause. [Cits.]" United States v. Berry, supra, p. 591.

Adopting the reasoning of Judge Johnson, speaking for the majority in Berry, we will weigh the intrusion on an individual's Fourth Amendment rights against equally important governmental interests in deterring the ever increasing drug smuggling problem. Thus, where airport stops are of "extremely restricted scope and conducted in a completely non-coercive manner," they will not invoke the Fourth Amendment. Berry, p. 594. No significant intrusion occurs if the law enforcement officer does not forcibly interfere with an individual's progress and ascertains whether the individual is willing to cooperate with police before making any further inquiries.

The question, of course, in no way reaches those situations where the individual approached does not consent to be searched; indeed, neither Mendenhall nor Reid intimates that, absent consent, a trip accompanied by agents to a secluded office to be searched would be less than the equivalent of an arrest. (According to Agent Markonni's testimony in Berry, about half the people approached agree to be searched (p. 608, n. 3). We agree that it is "striking" that so many individuals stopped at airports consent to search while carrying drugs and even show where they have hidden drugs. Berry, p. 598, n. 16.

In considering such airport stops, the question posed is whether an intrusion has occurred. Determinative factors include the lack of interference with the individual's progress, ascertaining whether the individual is willing to cooperate with police before making further inquiries, no display of official authority beyond a statement that the person stopping the individual is a law enforcement officer, and conducting the encounter in an appropriately deferential manner to

avoid causing the individual the anxiety and fear that troubled the Supreme Court in Delaware v. Prouse, 440 U. S. 648 (99 SC 1391, 59 LE2d 660). The entire initial encounter should be "so brief as to be insignificant. . . ." Berry, p. 595.

"[A] seizure has occurred if 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' [Cits.]" Berry, p. 595. In looking to the totality of the circumstances, the courts should closely scrutinize the presence of any coercion, analyzing with particular care evidence that the individual has consented to a search or to a request to accompany an agent to a private room. "Even verbal agreement to accompany an officer should be scrutinized exceptionally closely to ensure a complete absence of coercive influence." Berry, p. 598. Once a stop is found to be coercive, and thus a seizure, it can be constitutional only if based upon reasonable suspicion as defined by Terry v. Ohio, 392 U. S. 1, 21, supra.

Nor is reasonable suspicion automatically established because an individual meets a number of the characteristics of the drug courier profile, for the profile is merely an administrative tool of the police and the presence or absence of a particular characteristic on any given profile is therefore of no legal significance. However, "[i]f an officer can demonstrate why some factor, interpreted with due regard for the officer's experience and not merely in light of its presence on the profile, was, in the particular circumstances of the facts at issue, of such import as to support a reasonable suspicion that an individual was involved in drug smuggling . . . a court should [not] downgrade the importance of that factor. . . ." Berry, p. 601.

While McAdoo did not give Markonni a false name when asked to identify himself, he did use an alias on the airline tickets and Markonni was aware of that fact when he first approached him, as well as the information that appellant and his companion, neither of whom was dressed in business clothing, had spent only eighteen hours in a known drug center in a hotel room paid for in cash. We think these circumstances were sufficient to establish a reasonable suspicion for the initial encounter and questioning.

Nor do we find that appellant was subjected to a detention that was tantamount to an arrest requiring probable cause. Rather, the evidence shows that Agent Markonni scrupulously avoided any actual or implied authority in dealing with appellant. He was not in uniform; he made no physical contact; he did not raise his voice. After looking at and returning appellant's driver's license and airline tickets, he explained that he was a narcotics officer and asked if appellant "would mind cooperating" with him and allow Markonni to search him for drugs. Appellant stated that he did not mind and had

no drugs, and in fact requested that the search be carried out in "some place more private." His voluntary consent to be taken to be searched could not be more clear-cut. Most significantly, McAdoo exhibited none of the signs of nervous distress or incipient escape upon learning that Markonni was a narcotics officer looking for drugs being smuggled through the airport as shown by defendants Mendenhall, Reid, or Berry, thereby indicating "a coercive atmosphere that would negate consent." Berry, p. 607 (Anderson, J., concurring specially). Accord, *McShan v. State,* 155 Ga. App. 518 (1) (271 SE2d 659).

Thus, both prongs of the Berry test were met, i. e., McAdoo's consent to be searched was voluntary and not the result of an illegal detention, and the initial stop by Markonni did not constitute a seizure which would trigger Fourth Amendment protections. It therefore follows that denial of the motion to suppress the evidence obtained as a result of the search was without error. Compare *Berry v. State,* 163 Ga. App. 705 (3) (294 SE2d 562).

2. We likewise conclude that appellant's three enumerated errors concerning the trial court's rulings on his motion to have an independent laboratory analysis of the alleged drugs involved in the case made by a qualified expert of his own choosing are without merit. The trial court was authorized to conduct a pretrial hearing to determine whether the expert designated by appellant was qualified to perform the analysis, and to conclude that since this expert was neither licensed, registered nor otherwise exempted pursuant to Code Ann. § 79A-811 (a), he could not legally possess the controlled substances to perform the analysis or require the State Crime Laboratory to turn over the samples in its possession to him. *Sabel v. State,* 248 Ga. 10, 18 (6) (282 SE2d 61); *Patterson v. State,* 238 Ga. 204 (232 SE2d 233).

The appellant failed to carry his burden of proving that the expert of his choice was authorized to legally possess the substances to be analyzed. See Code Ann. §§ 79A-814 (b); 79A-829. This analyst testified at the hearing on the motion to have him qualified that such authorization had not been granted. The state produced evidence that there were "thousands of people" who were licensed to obtain the materials necessary to conduct the analysis. The trial court gave defense counsel approximately 24 hours to determine whether he wished to qualify this expert for any procedures which did not require reference samples of the controlled substance, or to qualify another expert. He did neither. Given the discretion vested in the trial court to impose such safeguards under *Patterson* and *Sabel,* supra, we cannot say that the restrictions here were so inappropriate as to constitute an abuse of discretion.

3. Appellant's remaining enumeration of error is not supported

by argument or citation of authority and is hence deemed abandoned under Rule 15 (c) (2), of this court. Code Ann. § 24-3615 (c) (2); *Brown v. State,* 161 Ga. App. 55 (1 (c)) (289 SE2d 9).

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

DECIDED SEPTEMBER 8, 1982 —
REHEARING DENIED OCTOBER 19, 1982 — ▉▉▉▉▉▉

*Robert B. McNeese, Jr.,* for appellant.
*Robert E. Keller, District Attorney, Steven E. Lister, Assistant District Attorney,* for appellee.