## 68696. ALLEN v. THE STATE.
(324 SE2d 521)

CARLEY, Judge.

Appellant was tried before a jury and convicted of two counts of violating the Georgia Controlled Substances Act. She appeals from the judgments of conviction and sentences entered on the guilty verdicts.

The facts, as established by the record, are as follows: On January 7, 1983, Drug Enforcement Administration Agent Paul Markonni and Clayton County Detective Lynn Collier were observing passengers deplane a flight from Miami, Florida. Markonni observed a passenger, who was later identified as Al Brown and who became appellant's co-indictee, ask an airline employee the gate number of his connecting flight to Chicago. Brown was not carrying an airline ticket envelope. Some distance behind Brown, appellant left the plane carrying two airline ticket envelopes. Appellant did not ask the airline employee for any information. However, as appellant started to walk past, the airline employee asked appellant if she needed flight information. Appellant responded, "Chicago." After receiving the flight information, appellant proceeded down the concourse behind Brown, who continually looked over his shoulder in appellant's direction. Based on their belief that appellant and Brown were traveling together but were attempting to conceal that fact, Markonni and Collier followed them. When Brown arrived at the gate of his connecting flight, he remained in the area, but he did not check in. Appellant, however, presented both of her tickets at the gate and received two boarding passes. Appellant then went to a telephone and made a call. Collier overheard appellant state in her telephone conversation, "I'm trying to help him out, make a little extra money." Collier related this information to Markonni. While appellant was using the phone, Markonni determined that the appellant's tickets were sequentially numbered and had been paid for with cash.

Based upon the foregoing, Markonni determined that appellant exhibited several characteristics of the drug-courier profile, and he suspected that appellant was, in fact, carrying illegal drugs. With their weapons concealed on their persons, Markonni and Collier, who were casually dressed and not in uniform, approached appellant in the middle of the concourse. Appellant stopped, and Markonni identified himself and Collier as law enforcement officers. Markonni dis-

played his credentials and asked appellant if he and Collier could speak to her. She responded "Yes." Markonni then asked appellant if he could see her airline ticket. Appellant opened both ticket envelopes and handed Markonni a ticket issued in the name of Julie Allen. Markonni returned the ticket and asked if appellant had any identification. Appellant produced a driver's license issued in the same name. At that point, Markonni told appellant that he and Collier were drug agents looking for narcotics and asked appellant if she would consent to a search of her person by Collier. Markonni testified that appellant "indicated that she would consent to the search." Appellant was then asked by Markonni if she was traveling alone. Her first response was "Yes." When asked again, however, she responded "Maybe." Finally, appellant volunteered that she was traveling with someone. Markonni then explained that the search could be conducted in a nearby private office and that it would take only a few minutes. This entire encounter lasted less than three minutes. Throughout, neither Markonni nor Collier touched appellant. They stood at her right front side, and Markonni spoke in a conversational tone.

Appellant accompanied Collier into a private office. Once inside the office, Collier informed appellant that she had the right to refuse to submit to a search of her person and the right to consult with an attorney. Collier asked appellant if she understood, and appellant responded that she did. Appellant was asked to stand and place her hands against the wall. A pat down search was initiated at appellant's waist and progressed up appellant's body. In the area of appellant's chest, Collier felt a suspicious bulge that she knew "was not breast nor bra." After stating that she felt the unusual bulge, Collier asked appellant to lift up her sweater so that she could see what it was. Appellant responded "No," and slowly began to lower her hands. Collier then placed appellant under arrest and removed the bulge herself. It was a package which later proved to contain cocaine.

Shortly thereafter, Brown was placed under arrest. Both appellant and Brown were read their Miranda rights. Markonni took possession of appellant's airline ticket, to which a baggage claim check was attached. The suitcase to which the corresponding claim check was attached was retrieved, and appellant acknowledged that the suitcase was hers. Markonni asked if he could search the suitcase, and appellant stated that he could. Although appellant further stated that the locked suitcase would have to be broken open because she did not have the key, it was unlocked with the key which was found in Brown's possession. A quantity of marijuana was found inside the suitcase.

1. Appellant enumerates as error the denial of her motion to suppress evidence of the illegal drugs, contending that she was illegally

"seized" within the meaning of the Fourth Amendment during her encounter with the two officers on the concourse.

"The Fourth Amendment's proscription against unreasonable searches and seizures governs all seizures of the person, 'including seizures that involve only a brief detention short of traditional arrest. [Cits.]' [Cit.] 'The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." [Cit.]' [Cit.] In distinguishing between an intrusion amounting to a 'seizure' of the person and an encounter that intrudes upon no constitutionally protected interest, we adopt that standard proposed by Justice Stewart in United States v. Mendenhall, [446 U. S. 544, 554 (100 SC 1870, 64 LE2d 497) (1980)]: '(A) person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Moran v. State*, 170 Ga. App. 837, 840 (318 SE2d 716) (1984). See also *McAdoo v. State*, 164 Ga. App. 23 (1) (295 SE2d 114) (1982).

In other words, the "Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief 'seizures' that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause. [Cits.]" United States v. Berry, 670 F2d 583, 591 (5th Cir. 1982). Factors determinative of whether or not an intrusion or "seizure" has occurred "include the lack of interference with the individual's progress, ascertaining whether the individual is willing to cooperate with police before making further inquiries, no display of official authority beyond a statement that the person stopping the individual is a law enforcement officer, and conducting the encounter in an appropriately deferential manner to avoid causing the individual . . . anxiety and fear . . . ." *McAdoo v. State*, supra at 26-27.

Under the facts of this case, it is clear that appellant was not "seized" during her encounter with Markonni and Collier on the concourse. As previously stated, the law enforcement officers did not display weapons. They were dressed in casual clothing and identified themselves. Markonni spoke in a conversational tone, asking for, rather than demanding, appellant's tickets and identification. Markonni held the ticket and driver's license only long enough to read them before returning them to appellant. The agents stood at appellant's side and did not block her path. Furthermore, the agents assured appellant that they would not cause her to miss her connecting flight.

" 'In short, nothing in the record suggests that [appellant] had any objective reason to believe that [she] was not free to end the conversation in the concourse and proceed on [her] way, and for that reason we conclude that the agent[s'] initial approach to [her] was not a seizure.' [Cits.]" *Voight v. State*, 169 Ga. App. 653, 654 (314 SE2d 487) (1984). See also *State v. Reid*, 247 Ga. 445, 449 (276 SE2d 617) (1981); *Moran v. State*, supra at 839 (1); *McShan v. State*, 155 Ga. App. 518 (1) (271 SE2d 659) (1980).

2. Appellant further asserts that after Markonni verified that the name on her ticket and on her identification corresponded, his subsequent request to search and his further questioning constituted an illegal detention.

Our review of the record reveals no evidence to authorize a finding that appellant had any cause to believe that she was no longer free to leave after she had identified herself. The evidence demonstrates that after Markonni returned appellant's ticket and identification, the encounter continued in a "deferential manner." In effect, appellant tacitly consented to stay and to answer Markonni's questions.

We know of no rule which mandates that a voluntary encounter between an officer and an individual must necessarily end once the officer determines that the individual possesses an airline ticket and a driver's license with corresponding names. Appellant voluntarily remained in the officer's presence after providing identification, and no illegal seizure occurred at this point. See generally *Voight v. State*, supra; *Williams v. State*, 251 Ga. 749, 791-792 (312 SE2d 40) (1983). Cf. *Scott v. State*, 253 Ga. 147, 149 (317 SE2d 830) (1984).

3. Appellant next asserts that she did not voluntarily accompany Collier to the private office where the search was conducted. The officers both testified that appellant freely accompanied them to the office in order to be searched. "[T]here was sufficient evidence to warrant the trial court in concluding that appellant voluntarily accompanied the agent to the site of the search. '[T]he trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. [Cits.]' [Cit.]" *McShan v. State*, supra at 519.

4. Appellant further contends that she did not voluntarily and freely consent to the search of her person by agent Collier. Again, both officers testified that appellant consented to the search of her person. Collier testified that once inside the private office she told appellant that she had the right to refuse to allow a search and that appellant stated that she understood. The evidence authorized the finding that appellant's consent to be searched was voluntary. See *McAdoo v. State*, supra at 28.

5. Appellant asserts that her arrest was illegal because it was not based upon probable cause.

"An arrest and search, legal under federal law, are legal under state law." *Durden v. State*, 250 Ga. 325, 327 (297 SE2d 237) (1982). " '[T]he constitutional validity of [an] arrest without a warrant depends "upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [appellant] had committed or was committing an offense." Beck v. Ohio, 379 U. S. 89, 91 (85 SE 223, 13 LE2d 142) [1964]. "In dealing with probable cause . . . as the very name implies, we deal with probabilities. They are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [Cit.]' " *Sanders v. State*, 235 Ga. 425, 440 (219 SE2d 768) (1975).

The evidence demonstrates that Collier had conducted numerous pat down searches for narcotics in the past, and had previously found narcotics hidden in the breast area. At the point that appellant was placed under arrest, Collier knew: that appellant exhibited some of the characteristics of the drug courier profile; that appellant had been concealing the fact that she was traveling with someone; that appellant had made a phone call, wherein she was overheard to say "I'm just trying to help him out, make a little extra money," and; that appellant refused to identify an abnormal, suspicious bulge that "was not breast nor bra," located under her sweater. Based upon the foregoing, we find that Collier had probable cause to believe that appellant was committing an offense involving concealed contraband and to place her under arrest. It was not necessary for Collier to know the exact nature of the suspicious bulge for probable cause to exist. "Probable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction. [Cits.]" *Cook v. State*, 136 Ga. App. 908, 909 (1) (222 SE2d 656) (1975). See also *Aguero v. State*, 169 Ga. App. 462 (313 SE2d 735) (1984).

6. The arrest of appellant having been found to be sufficiently supported by probable cause, the assertion that the subsequent search of appellant's suitcase was the "fruit of an illegal arrest" is without merit. Likewise without merit is appellant's contention that Markonni's acts of taking appellant's claim check and of retrieving the luggage constituted an illegal seizure of that luggage. It is clear that Markonni's interception of checked luggage from the airline was supported by reasonable suspicion, as illegal drugs had already been discovered on appellant's person. See *Yocham v. State*, 165 Ga. App. 650, 651-652 (302 SE2d 390) (1983). Moreover, there was sufficient evidence from which the trial court could conclude that appellant subsequently voluntarily consented to a search of her suitcase. See

*Moran v. State,* supra; *Woodruff v. State,* 233 Ga. 840, 844 (213 SE2d 689) (1975); *Voight v. State,* supra.

7. Appellant next enumerates as error the general grounds as to Count I of the indictment, which alleged her unlawful possession of marijuana with intent to distribute. Specifically, appellant contends that the State failed to prove either her possession of the marijuana found in the suitcase or the venue of that crime.

The law recognizes two kinds of possession, actual possession and constructive possession. *Dalton v. State,* 249 Ga. 720 (292 SE2d 834) (1982). "[A] person who knowingly has direct physical control over a thing at a given time is in actual possession of it. [Cit.]" *Evans v. State,* 167 Ga. App. 396, 397 (306 SE2d 691) (1983). The defendant in *Evans* was in possession of the keys to a locked airplane and, also, of the keys to locked suitcases, containing marijuana, located in the plane. This evidence was found to be sufficient to support an inference that the defendant had direct physical control over the marijuana. Likewise, in the present case, evidence of appellant's possession of the baggage claim check for the suitcase was sufficient to support the inference that she had actual possession of the suitcase and its contents.

Even if appellant was not in "actual possession" of the suitcase, the fact that appellant possessed the claim check certainly was sufficient to show her "constructive possession" of the bag in that, at a given time, she knowingly had both power and intention to exercise control over the suitcase. See *Lee v. State,* 126 Ga. App. 38 (189 SE2d 872) (1972).

Having found that the evidence was sufficient to establish appellant's possession of the marijuana, it necessarily follows that venue for Count I of the indictment was established by evidence that the relevant events occurred on an airport concourse in Clayton County. Where there is no conflicting evidence, slight evidence is sufficient to establish venue. *Aldridge v. State,* 236 Ga. 773, 774 (225 SE2d 421) (1976).

The State established all of the elements of the offense beyond a reasonable doubt, and any rational trior of fact could have found appellant guilty of unlawful possession with intent to distribute marijuana. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

8. The final enumeration is that the trial court erroneously charged the jury that, if it believed beyond a reasonable doubt that the appellant committed the offenses at any time *within four years* prior to the filing of the indictment, it could return a verdict of guilty. Appellant asserts that this charge allowed the jury to speculate as to whether or not she had committed any other criminal acts within the preceding four years.

In *Horton v. State*, 163 Ga. App. 809, 811 (295 SE2d 554) (1982), this court held that "[i]n the absence of a time variance or confusion as to which one of two or more crimes charged is under discussion, it is not error to charge that if the jury finds that the crime was committed within four years of the date in the indictment and finds beyond a reasonable doubt the other essential elements of the crime charged, the jury may return a finding of guilty. [Cits.]" There was no time variance or confusion as to which one of two or more crimes charged was under discussion in the instant case, and we find no error.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 20, 1984.

*Diane E. Marger*, for appellant.
*Robert E. Keller, District Attorney, William L. McKinnon, Jr., Assistant District Attorney*, for appellee.