76380. THE STATE v. RICHARDSON.
(370 SE2d 762)

POPE, Judge.

Appellee Leoncer Albert Richardson was indicted on the charge of trafficking in cocaine. The State brings this appeal from the lower court's grant of appellee's motion to suppress evidence.

The evidence adduced at the suppression hearing, which consisted entirely of the testimony of Special Agent Gill Lalumiere of the Georgia Bureau of Investigation, established the following: On July 1, 1987 Agent Lalumiere was awaiting the arrival of Delta Flight No. 117, from Miami, Florida, a known drug source city, when he and his partner observed the appellee deplane. Appellee was attired in gym shorts and a mesh shirt that hung loosely over part of his shorts and was carrying a small blue tote bag. Agent Lalumiere testified that his attention was first drawn to appellee because he was clutching the tote bag to his body instead of carrying it by the handles. Lalumiere further testified that the bag did not appear to be full, and that this fact, coupled with the manner in which appellee was carrying the bag, indicated to Lalumiere the possibility of drug trafficking.

According to the testimony of Agent Lalumiere, appellee then briefly looked around and started walking towards the escalators that

led to the terminal baggage claim area. Agent Lalumiere and his partner followed appellee down the escalator. At the bottom of the escalator Lalumiere approached appellee, identified himself verbally, displayed his credentials and asked appellee if he could speak with him for a moment. Lalumiere also asked appellee if he would mind moving to the side of the escalator so as not to impede the flow of traffic and appellee complied. Agent Lalumiere's partner remained approximately three feet away to avoid crowding appellee.

Agent Lalumiere asked to see appellee's airline ticket, which was a one-way cash ticket from Miami to Savannah, Georgia via Atlanta. The officer also ascertained that appellee had no checked luggage. Agent Lalumiere returned appellee's ticket and requested additional identification, which appellee produced after unzipping his tote bag and "very carefully" reaching into it, so as to give the appearance that he did not want anybody to see inside the bag. Although both appellee's driver's license and health department card matched the name on his ticket, Agent Lalumiere said his suspicions were further aroused because of the careful manner in which appellee handled the tote bag. Lalumiere testified that he then informed appellee that they were narcotics officers looking for narcotics and related items coming through the airport and requested appellee's cooperation by asking him to allow them to search his bag and person. Lalumiere said that appellee responded "Yes, sure" and Lalumiere unzipped the bag, which was still on the floor where appellee had placed it, and searched the bag finding no evidence of contraband. Lalumiere said he stood up and thanked appellee for his cooperation and "almost simultaneously" looked at his partner who was pointing at appellee's abdomen. Lalumiere stated he looked in the direction his partner was pointing and noticed an "obvious bulge" in appellee's shorts. Officer Lalumiere asked appellee to identify the bulge and appellee stated that it was his penis. Lalumiere testified that contemporaneously with this statement he reached out and touched the bulge, which he described as "pliable." He stated that "[o]n several previous experiences, I have felt and retrieved from defendants cocaine that had exactly the same almost feel." Lalumiere described the bulge as having little lumps in it, which looked similar to knuckles protruding from a fist. Lalumiere said that both the location and shape of the bulge indicated to him that it was not the appellee's penis. On the basis of this information, Lalumiere placed appellee under arrest and retrieved the bulge, which was later identified as cocaine, from appellee's shorts. Lalumiere stated that prior to the time he placed appellee under arrest, he never manifested to appellee that he was not free to leave and walk away should he so choose. Moreover, Lalumiere stated that he never threatened or coerced appellee, and that both he and his partner were casually dressed and displayed no visible weapons.

"The three tiers of inquiry concerning . . . police-citizen contact [such as in the case at bar] adopted by our Supreme Court are: (1) Was the initial interview conducted in a non-coercive manner (i.e., without display of weapons or in the absence of peremptory or commanding tone of voice), and did that interview intrude upon any protections afforded to an airline passenger by the Fourth Amendment; (2) Was the beginning seizure brief in time and solely for investigative purposes based upon an articulable suspicion; or (3) Was the seizure of a nature reasonably to cause the seized party to believe that his freedom was removed and in such a case were there articulable facts sufficient to raise probable cause that a crime was in progress, i.e., was there probable cause for a full scale arrest? *Yocham v. State*, 165 Ga. App. 650 (302 SE2d 390) [(1983)]." *Aguero v. State*, 169 Ga. App. 462, 464 (313 SE2d 735) (1984).

In the present case, there is no evidence that appellee was "seized" prior to the time Agent Lalumiere actually placed him under arrest. " 'The events took place in the public concourse. The agents wore no uniforms and displayed no weapons. They did not summon [appellee] to their presence, but instead approached (him) and identified themselves as [law enforcement] agents. They requested, but did not demand to see the [appellee's] identification and ticket. Such conduct, without more, did not amount to an intrusion upon any constitutionally protected interest. The [appellee] was not seized simply by reason of the fact that the agents approached (him), asked if (he) would show them (his) ticket and identification, and posed to (him) a few questions. Nor was it enough to establish a seizure that the person asking the questions was a law enforcement official . . . In short, nothing in the record suggests that the [appellee] had any objective reason to believe that (he) was not free to end the conversation . . . and proceed on (his) way . . .' *United States v. Mendenhall*, 446 U. S. 544, 555 (100 SC 1870, 64 LE2d 497) (1980). Accord *State v. Reid*, 247 Ga. 445 (276 SE2d 617) (1981); *Allen v. State*, 172 Ga. App. 663 (1) (324 SE2d 521) (1984); *Berry v. State*, 163 Ga. App. 705 (3) (294 SE2d 562) (1982)." *Ullrich v. State*, 176 Ga. App. 260, 261-262 (335 SE2d 490) (1985). See also *Voight v. State*, 169 Ga. App. 653 (314 SE2d 487) (1984); *McAdoo v. State*, 164 Ga. App. 23 (1) (295 SE2d 114) (1982); *McShan v. State*, 155 Ga. App. 518 (271 SE2d 659) (1980).

Remaining, however, is the question of whether the subsequent arrest and seizure of appellee was based on probable cause. "An arrest and search, legal under federal law, are legal under state law. *Durden v. State*, 250 Ga. 325, 327 (297 SE2d 237) (1982). The constitutional validity of an arrest without a warrant depends upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within

their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [appellee] had committed or was committing an offense. *Beck v. Ohio*, 379 U. S. 89, 91 (85 SE 223, 13 LE2d 142) (1964). In dealing with probable cause . . . as the very name implies, we deal with probabilities. They are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. (Cit.) *Sanders v. State*, 235 Ga. 425, 440 (219 SE2d 768) (1975)." (Punctuation omitted.) *Allen v. State*, 172 Ga. App., supra at 667.

In the present case, the evidence shows that at the time the appellee was placed under arrest, Lalumiere had ascertained that appellee exhibited characteristics of the drug courier profile, the most notable of which were that appellee was traveling on a one-way cash ticket from a known drug source city with little or no luggage. At the time of the arrest Agent Lalumiere also knew that appellee had an abnormal bulge in his abdominal region which neither looked nor felt like what appellee stated it to be. Moreover, Agent Lalumiere's tactile impression of the bulge was consistent with his prior experience concerning how cocaine feels. "Based upon the foregoing, we find that [Lalumiere] had probable cause to believe that [appellee] was committing an offense involving concealed contraband and to place [appellee] under arrest. It was not necessary for [Lalumiere] to know the exact nature of the suspicious bulge for probable cause to exist. 'Probable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction. (Cits.)' *Cook v. State*, 136 Ga. App. 908, 909 (1) (222 SE2d 656) (1975). See also *Aguero*, [supra]." *Allen*, supra at 667. It is well established that a valid search may be made incident to a legal arrest when supported by probable cause. See, e.g., *Griffin v. State*, 180 Ga. App. 189 (348 SE2d 577) (1986); *State v. Gilchrist*, 174 Ga. App. 499 (2) (330 SE2d 430) (1985); *Moran v. State*, 170 Ga. App. 837 (1) (318 SE2d 716) (1984). Consequently, the seizure of the contraband in the present case may be viewed as the fruit of a lawful search incident to arrest. It follows, therefore, that the trial court erred in granting appellee's motion to suppress.

*Judgment reversed. McMurray, P. J., concurs. Benham, J., concurs specially.*

BENHAM, Judge, concurring specially.

I write separately to emphasize that my concurrence is not based merely on the existence of probable cause for the stop, but on the officer's testimony that appellant freely gave his consent to the search of his luggage and his person prior to the actual search, and that this consent was not withdrawn prior to discovery of the unusual bulge.

No evidence was offered to contest the officer's version of the incident; therefore, the search must be viewed as consensual and not violative of appellant's Fourth Amendment rights. *Scott v. State*, 253 Ga. 147 (317 SE2d 830) (1984).

DECIDED MAY 27, 1988 —
REHEARING DENIED JUNE 8, 1988 —

*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellant.

*John A. Beall IV, Jerry L. Patrick, Jr.*, for appellee.