### 76862. BROWN v. THE STATE.
(373 SE2d 99)

McMURRAY, Presiding Judge.

Defendant Brown appeals his conviction of the offense of trafficking in cocaine. The sole enumeration of error contends the trial court erred in denying defendant's motion to suppress evidence. *Held*:

On February 19, 1987, defendant arrived at the Atlanta airport on an early morning flight from Fort Lauderdale. Flights from south Florida cities are commonly watched by law enforcement officers because that area has been confirmed as a source of illegal drugs.

Two law enforcement officials (Officer Noe and Agent Lalumiere) observed defendant deplane and get directions to a connecting flight. The officers approached an airline employee and learned that defendant had a reservation for a flight to Cleveland and that defendant's flight reservations had been made within an hour prior to his departure from Fort Lauderdale.

The officers followed defendant and observed that he was looking around nervously. After defendant did not follow a direct route to the departure gate for his connecting flight, the officers approached defendant.

The officers identified themselves and asked defendant's permission to speak to him for a moment. The officers were casually attired and any weapons they carried were concealed. After defendant consented to converse with the officers, the officers asked to see defendant's airline ticket.

Defendant produced his ticket which was a one-way ticket purchased with cash. There was no checked luggage coupon stapled to the inside of the ticket envelope. These facts were significant to the officers since they were consistent with the practices of drug couriers.

When asked his name defendant said he was Douglas Brown and when asked to produce identification defendant produced a Florida driver's license in the name of Douglas Brown. The airline ticket and driver's license were returned to defendant.

At that time defendant was advised that the law enforcement officers were narcotics agents looking for illegal drug trafficking and he was asked to cooperate by allowing a search of his person and luggage. "First [defendant] said, do you have a search warrant? And, [Officer Noe] said, no, we're asking — we would like your cooperation. And, [defendant] said, okay. [Defendant] said, yes. No [Officer Noe] said, we would like your cooperation, will you cooperate with us? [Defendant] said, yes. And, then [Officer Noe] said, we can go to a private room if you would like to. We can do it here or we can go to a private room. At that time [defendant] said, I want to call my attorney first." Officer Noe advised "that was fine" and pointed to the row of telephones 20 to 30 yards away. "[Defendant] kind of walked the way that [Officer Noe] pointed to where the telephones were and then he stopped and looked around and he laid his yellow plastic bag down in the seat then turned around and walked towards the escalator. . . ." Defendant went down the escalator to the spine connecting the various concourses of the airport. Officer Noe picked up defendant's plastic bag and the officers followed defendant on the escalator pointing out nearby telephones. Defendant became "extremely nervous and was breathing heavily."

Officer Noe asked for and was given consent by defendant to look in defendant's plastic bag. After looking in the bag Officer Noe returned the bag to defendant. While this was going on defendant continued to walk, repeatedly passing public telephones.

Finally, at the bottom of the escalators leading to concourse "C" defendant "stopped and look around several times. Agent Lalumiere asked him what he was looking for and he said he was looking for an exit. Agent Lalumiere advised him that the exit was back the other way, he was going the wrong way . . . At that time [defendant] continued to look around nervously for a second and shrugged his shoulders and turned and proceeded up the escalator. At first when he turned around and went toward the escalator, he was walking briskly. As he got to the escalator, he started running up the escalator, one step at a time and then two steps at a time . . . [Officer Noe] was behind him, [Officer Noe] was just running up the escalator along right behind him. [Officer Noe] was just running up the escalator . . . [Officer Noe] ran all the way up the escalator . . . right on the step

behind [defendant] and then at the top of the escalator, like three or four steps from the top, [defendant] threw the yellow plastic bag down on the ground and got to the top and just continued to run." At that time Officer Noe grabbed defendant and attempted to subdue him. "In an attempt to subdue [defendant] there was a slight scuffle and Agent Lalumiere noticed that [defendant] had stuck his hand down towards the front of his pants as if to try to grab something. Agent Lalumiere reached with the hand that was grabbing to the front of [defendant's] pants and produced a plastic bag containing an off-white chunky powdered substance. . . ."

"Contrary to defendant's argument, the conduct of the officers in approaching defendant and identifying themselves as law enforcement officers accompanied with their request to see defendant's ticket and identification . . . did not amount to an intrusion upon any constitutionally protected area. Nor did the absence of an express statement to defendant that he was free to leave suggest that defendant was 'seized.' Nothing suggests defendant had any objective reason to believe that he was not free to end the conversation and proceed on his way. Such police-citizen encounters involving no coercion or detention are without the compass of the 4th Amendment. *United States v. Mendenhall*, 446 U. S. 544 (100 SC 1870, 64 LE2d 497); *Goodman v. State*, 180 Ga. App. 347 (349 SE2d 216); *Ullrich v. State*, 176 Ga. App. 260 (335 SE2d 490); *Allen v. State*, 172 Ga. App. 663 [(324 SE2d 521)]; *Moran v. State*, 170 Ga. App. 837 (318 SE2d 716)." *LeBlanc v. State*, 184 Ga. App. 789, 790, 791 (363 SE2d 37). See also *Verhoeff v. State*, 184 Ga. App. 501, 503 (2) (362 SE2d 85).

By that point in time when Officer Noe did in fact physically seize and subdue defendant at the top of the escalator on concourse "C" it was apparent that defendant's consent to search and request to telephone his attorney had been withdrawn. However, during the preceding interval defendant's conduct had consisted of an exhibition of increasing stress, rising to perhaps panic and an attempt to flee. This conduct combined with the officer's knowledge of defendant's drug courier profile characteristics (traveling with no luggage from a drug distribution point on a one-way ticket purchased shortly before departure with cash) gave the officer probable cause to believe that defendant was committing an offense involving concealed contraband. *LeBlanc v. State*, 184 Ga. App. 789, 791, supra. The trial court did not err in denying defendant's motion to suppress evidence.

*Judgment affirmed. Pope and Benham, JJ., concur.*

DECIDED SEPTEMBER 15, 1988.

*Charles J. Driebe, Jr.*, for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assis-*