A89A0983. OWENS v. THE STATE.
(385 SE2d 761)

McMURRAY, Presiding Judge.

Defendant was charged in two counts for trafficking in cocaine and for violating Georgia's Controlled Substances Act (possession of less than one ounce of marijuana). The evidence adduced at a motion to suppress hearing revealed the following:

While working in plain-clothing at the Atlanta airport, Agent Terrell Toles of the Drug Enforcement Administration's Airport Task Force observed defendant deplane from a flight arriving from Fort Lauderdale, Florida. Defendant was dressed casually and he was carrying "a small suitcase . . . ." As defendant approached airline employees who were assisting passengers with their connecting flights, Agent Toles positioned himself behind and to the side of defendant. Agent Toles discovered that defendant's travel arrangements and itinerary matched those of a typical drug courier, i.e., defendant's flight reservation was one-way passage from a known drug source city,

defendant had paid cash for his airline ticket and defendant had purchased his ticket shortly before the flight.

Agent Toles and Agent Gil Lollimere, another plainclothes drug enforcement officer, proceeded to the boarding gate of defendant's connecting flight. As the agents approached the area, Agent Toles noticed defendant walking in their direction and, from a distance of "[a]bout fifty feet . . .," he observed defendant stop and turn around "as if he was just looking around . . . ." Defendant then "circled" and the agents "walked up beside . . ." defendant; identified themselves as law enforcement officers and Agent Toles "asked [defendant] if [he] could speak to him for a second." Defendant consented and Agent Toles asked defendant for his airline ticket. Defendant produced his ticket and Agent Toles noticed that defendant had no baggage claim receipts attached to the ticket, another characteristic of a drug courier. Agent Toles returned the ticket to defendant and asked defendant for identification. Defendant produced a "State of Florida birth registration card . . ." and, after inquiry, defendant indicated that he had no "pictured identification . . . ." Agent Toles returned the birth registration card to defendant and informed defendant that he and Agent Lollimere "were narcotics officers looking for drugs and or the proceeds from drug transactions going through the airport." At that point, defendant's "breathing became real heavy and his hands were shaking." Agent Toles asked defendant if "he would cooperate and allow a search of himself and of the suitcases that [defendant] was carrying." Defendant responded, "yeah, okay." Agent Toles "then explained to [defendant] that the search could be done there in the public area . . . or that [they] could go to a small private office that was just a few feet away . . . ." Defendant "indicated that he preferred a private office."

After the men entered the private office, Agent Toles again asked defendant for permission to conduct a search. Defendant agreed and, "[a]s [Agent Toles] began to unzip the bag, [defendant] made the statement, you guys go ahead and arrest me." Agent Toles asked, "why is that . . ." At that moment, Agent Toles looked in defendant's suitcase and discovered two packages which contained "approximately five hundred and sixty grams of a white powder" which he suspected to be cocaine. Defendant was placed under arrest and a search of defendant's clothing revealed that he was also carrying a substance which appeared to be marijuana. Upon the conclusion of the hearing, the trial court denied defendant's motion to suppress evidence. The case was later tried before the court without a jury and defendant was found guilty on both counts of the indictment. This appeal followed. *Held*:

1. Defendant first contends the trial court erred in denying his motion to suppress evidence, arguing that "there was no reasonable

and articulable suspicion a crime was about to be committed [, that his] detention . . . violated his constitutional right to be free from unreasonable searches and seizures and therefore the evidence should have been excluded as fruit of the poisonous tree."

"The Fourth Amendment's proscription against unreasonable searches and seizures governs all seizures of the person, 'including seizures that involve only a brief detention short of traditional arrest. [Cits.]' [Cit.] 'The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." (Cit.]' [Cit.] In distinguishing between an intrusion amounting to a 'seizure' of the person and an encounter that intrudes upon no constitutionally protected interest, [this Court has adopted the] standard proposed by Justice Stewart in *United States v. Mendenhall*, (446 U. S. 544, 554 (100 SC 1870, 64 LE2d 497) (1980)); '(A) person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Moran v. State*, 170 Ga. App. 837, 839 (1), 840 (318 SE2d 716) (1984). See also *McAdoo v. State*, 164 Ga. App. 23, 25 (1) (295 SE2d 114) (1982).

"In other words, the 'Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief "seizures" that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause. (Cits.)' *United States v. Berry*, 670 F2d 583, 591 (5th Cir. 1982). Factors determinative of whether or not an intrusion or 'seizure' has occurred 'include the lack of interference with the individual's progress, ascertaining whether the individual is willing to cooperate with police before making further inquiries, no display of official authority beyond a statement that the person stopping the individual is a law enforcement officer, and conducting the encounter in an appropriately deferential manner to avoid causing the individual . . . anxiety and fear . . . .' *McAdoo v. State*, supra at 26-27." *Allen v. State*, 172 Ga. App. 663, 664 (1), 665 (324 SE2d 521).

In the case sub judice, the agents wore no uniforms and displayed no weapons. They did not summon defendant to their presence, but instead "walked up beside" defendant and identified themselves as law enforcement officers. Agent Toles spoke in a conversational tone, asking for, rather than demanding, defendant's ticket and identification. Agent Toles held the ticket and identification card only long enough to read them before returning them to defendant. Finally, Agent Toles twice requested defendant's permission to search defend-

ant and his belongings. These circumstances demonstrate that defendant was not "seized" during his encounter with Agent Toles and Agent Lollimere in the airport. " 'In short, nothing in the record suggests that the (defendant) had any objective reason to believe that (he) was not free to end the conversation . . . and proceed on (his) way . . .' *United States v. Mendenhall*, 446 U. S. 544, 555 [, supra]. Accord *State v. Reid*, 247 Ga. 445 (276 SE2d 617) (1981); *Allen v. State*, 172 Ga. App. 663 (1) [, supra]; *Berry v. State*, 163 Ga. App. 705 (3) (294 SE2d 562) (1982)." *Ullrich v. State*, 176 Ga. App. 260, 262 (335 SE2d 490). Consequently, since defendant's encounter with the agents involved no coercion or detention, his constitutional rights were not invoked and the trial court did not err in denying defendant's motion to suppress. See William W. Daniel's Ga. Criminal Trial Practice, (1986 ed.) § 3-4, 53.

2. Next, defendant contends that he did not voluntarily and freely consent to the search of his suitcase.

Agent Toles testified that defendant consented to the search in a public area of the airport and again in the private office where the search was conducted. This evidence was sufficient to warrant the trial court in concluding that defendant's consent to the search was freely and voluntarily made. See *Allen v. State*, 172 Ga. App. 663, 666 (4), supra. " ' "(T)he trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. (Cits.)" (Cit.)' *McShan v. State*, [155 Ga. App. 518, 519 (2) (271 SE2d 659)]" *Allen v. State*, 172 Ga. App. 663, 666 (3), supra.

*Judgment affirmed. Carley, C. J., and Beasley, J., concur.*

Decided September 5, 1989.

*William E. Frey*, for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellee.