## A97A1690. MURPHY v. THE STATE.
### (496 SE2d 512)

McMurray, Presiding Judge.

Defendant Murphy filed this appeal after his conviction for trafficking in cocaine. Defendant contends the trial court erred in denying his motion to suppress cocaine which drug enforcement agents seized from his pants during a warrantless search at Atlanta International Airport. We reverse because defendant's consent to this search was coerced and the search was not supported by probable cause. "When an officer represents to an accused that a warrant to search will be obtained if consent is refused, and does not have probable cause to secure the warrant, then the accused's consent is invalid. *Code v. State*, 234 Ga. 90, 95 (214 SE2d 873) (1975)." *Darby v. State*, 216 Ga. App. 781, 783 (2) (455 SE2d 850).

The trial court's order denying defendant's motion to suppress includes the following findings of fact: "The testimony at the [motion to suppress] hearing included that of [Special Agent] Roderick Jordan of the Georgia Bureau of Investigation. Agent Jordan is a member of the Drug Enforcement Task Force stationed at the Atlanta Airport. Agent Jordan testified that he has 22 years of experience in narcotics, including seven years stationed at the airport. Agent Jordan's training includ[es] six months on-the-job training with Agent Paul Markonni and several training schools. Agent Jordan stated that he had interviewed hundreds or thousands of people in regards to drugs and had found concealed drugs.

"The evidence shows that on November 16, 1995, [Special] Agent Robert Johnson [of the Drug Enforcement Administration] relayed to Agent Jordan information that he had received. This information indicated that a man, who identified himself as Jeffrey Murphy, had purchased a round-trip cash ticket from Atlanta to Newark. The ticket was purchased at 6:21 p.m. for a flight that left Atlanta at 8:00 p.m. No reservation had been made. The flight was scheduled to arrive in Newark at 10:07 [p.m.] Murphy's return flight was scheduled for 7:00 a.m. the next morning. The Agents realized that, according to his itinerary, Murphy could only have spent approximately nine hours in Newark. The description obtained of Mr. Murphy was of [an African-American] male, approximately thirty, 5'10" or 5'11" with gold in his teeth, wearing a mid-length leather coat. Murphy did not check any luggage.

"Agent Jordan testified as to the significance of the flight to Newark. He stated that New York City is considered a drug-source city and Newark is a gateway to New York. Drug couriers frequently fly to Newark when they cannot get a flight into one of the two New York airports. Jordan testified that Newark airport is in fact closer to New York City than one of the New York airports.

"Agent Jordan testified the [significance] of a ticket purchased shortly before a flight is that it is typical of the drug trade. People in the drug business are in a hurry and do not make prior plans or prior reservations. Further, drug couriers often do not check any luggage because they are not staying long and try to travel as light as possible. Drug couriers often pay with cash to prevent showing a trail of their travel and because drugs are generally a cash business.

"Agents Jordan and Johnson identified a man getting off the plane from Newark who fit the description of Jeffrey Murphy. He was walking very quickly. The Agents caught up to him by the escalator. Agent Johnson approach[ed] the man and identified himself. Agent Jordan positioned himself so as to hear the conversation. Agent Johnson asked to speak with the man who later identified himself as Jeffrey Murphy. Murphy agreed to speak with the Agents and Agent Johnson asked to see his ticket. Defendant patted his pants and pockets looking for his ticket. According to Agent Jordan, Murphy patted himself down eight times looking for his ticket. Finally, he told Agent Johnson that he must have left his ticket on the plane. (The ticket was subsequently found in his coat pocket after Defendant was searched.)

"Agent Johnson asked Defendant for his name and identification. Defendant provided a New York driver's license with the name Jeffrey Murphy. After possibly noting some information on a newspaper, [Agent] Johnson returned the license to Murphy. The agent questioned Murphy about his trip. Murphy stated that he had gone to see a friend and later added that the friend was sick. Murphy could not provide the friend's name. Murphy later stated that he went to visit his sick son in the hospital, but could not provide his son's name or the name of the hospital.

"Agent Johnson asked Defendant for permission to search him. Defendant refused consent and responded, 'Isn't it my right not to be searched?' After more questioning, the Agents again asked for permission to search, Defendant said no. Agent Jordan asked him why he did not want to be searched and if it was because he was embarrassed. Defendant said he just did not want to be searched. The Agents then advised Defendant that they were detaining him so that they could apply for a search warrant. Defendant told the Agents to go ahead and search. Agent Jordan testified he asked Murphy two or three times if he was sure it was alright. Murphy turned and put his

hands on the wall. Agent Jordan told him that was unnecessary. The ensuing search revealed a brick of cocaine in the Defendant's pants just below the waistline.

"Agent Jordan testified that during the encounter (prior to the search) the Defendant had become increasingly nervous. His breathing was heavy and shallow. Defendant had trouble speaking and avoided eye contact. His hands shook. After Defendant gave the agents his identification, he put his hands in his coat pocket and kept pulling the coat closed as if he was trying to hide something in the area of his waist. Murphy's shirt was not tucked into his pants. [Agent] Jordan testified this is typical of drug couriers transporting drugs on their body. [Special] Agent Robert Johnson . . . testified to essentially the same facts as [Agent] Jordan." *Held*:

1. The articulable suspicion which will authorize an airport stop under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889), has been defined as whether under the totality of the circumstances the law enforcement officer has " 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981)." *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474). Evidence in the case sub judice that defendant deplaned in Atlanta after an 11-hour round-trip to Newark, New Jersey, via an air route known to be used by drug couriers for access to a nearby drug-source city (New York, New York), with no luggage and with a ticket purchased with cash shortly before departure; that defendant was sloppily clad in the type of loose-fitting garb typically used by drug couriers to conceal drugs; that defendant appeared nervous during his encounter with the drug enforcement agents and that defendant gave conflicting and incomplete accounts of his reasons for going to New Jersey authorized reasonable suspicion that defendant was transporting illegal drugs. See *Morris v. State*, 220 Ga. App. 818, 819 (470 SE2d 458); *State v. Grant*, 195 Ga. App. 859, 861 (2), 862 (394 SE2d 916). Special Agent Jordan and Special Agent Johnson were thus authorized in briefly detaining defendant under *Terry v. Ohio*, 392 U. S. 1, supra. But to expand the scope of this intrusion to a full scale search the agents must have had either probable cause or defendant's voluntary consent. *Scott v. State*, 253 Ga. 147, 149 (317 SE2d 830).

The trial court found the rule in *Darby v. State*, 216 Ga. App. 781, 783 (2), supra, inapplicable in the case sub judice because the drug enforcement agents did not outright threaten defendant with a search warrant if he did not consent to an on-the-scene search. The trial court reasoned that the agents merely informed defendant that he was being "temporarily detained so that they could get a search warrant." The circumstances reflected in the trial court's findings of

fact render it difficult to justify this logic.

Defendant explicitly refused Special Agent Johnson's initial request for him to submit to an on-the-scene search and responded by saying, " 'Isn't it my right not to be searched?' " Instead of answering this question, Special Agent Johnson and Special Agent Jordan ignored the subject of constitutional rights and pressured defendant to give up his resistance. Defendant nonetheless stood his ground and only gave up his right (absent probable cause) to be free from an intrusive body search when "[t]he Agents . . . advised Defendant that they were detaining him so that they could apply for a search warrant." Under these circumstances, we cannot affirm the trial court's finding that defendant's consent was not the product of the type of intimidation reproved in *Darby v. State*, 216 Ga. App. 781, 783 (2), supra. In the case sub judice, the totality of circumstances points to but one plausible end. Special Agents Johnson's and Jordan's statements to defendant, "that they were detaining him so that they could apply for a search warrant," were nothing more than last ditch ploys aimed at avoiding the requirement for a probable cause determination before a detached and impartial magistrate. We must, therefore, address the issue of probable cause.

In *McAdoo v. State*, 164 Ga. App. 23 (295 SE2d 114), this Court held that reasonable suspicion for a brief *Terry* stop is established when factors satisfying the "drug courier profile" (such as traveling under an alias, dressing casually, spending a short time in a known drug source city, and paying cash for a hotel room) are shown by the investigating officer to be "of such import as to support a reasonable suspicion that an individual was involved in drug smuggling. . . .' [Cit.]" Id. at 25 (1), 27, supra. See *Bothwell v. State*, 250 Ga. 573, 575 (1) (300 SE2d 126). But the same factors, even when combined with possible deception by the suspect, are insufficient to establish probable cause for an arrest or a search. *DiSanti v. State*, 190 Ga. App. 331, 334 (1) (378 SE2d 729). Concrete evidence of smuggling activities, such as an alerting police dog trained to detect illegal drugs, unusual clothing bulges, or flight from an investigating officer with reasonable suspicion for a *Terry*-type encounter, is required for probable cause to search. See *Bothwell v. State*, 250 Ga. 573, 579 (6), supra; *State v. Richardson*, 187 Ga. App. 456, 459 (370 SE2d 762); *Alex v. State*, 220 Ga. App. 754, 757 (3) (470 SE2d 305). Such concrete factors do not exist in the case sub judice.

Other than matching several aspects of the drug courier profile, defendant's conflicting and incomplete accounts of his reasons for going to New Jersey were the only other factors observed by Special Agents Jordan and Johnson. "While these factors give rise to reasonable and articulable suspicion [for a brief detention of defendant], they do not give rise to probable cause for arrest or search." *DiSanti*

*v. State*, 190 Ga. App. 331, 334 (1), 335, supra. Accordingly, the trial court erred in denying defendant Murphy's motion to suppress.

2. Our holding in Division 1 renders it unnecessary to address defendant's remaining enumeration of error.

*Judgment reversed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JANUARY 28, 1998.

*Garland, Samuel & Loeb, Donald F. Samuel*, for appellant.

*Robert E. Keller, District Attorney, Erman J. Tanjuatco, Assistant District Attorney*, for appellee.