71188. INGRAM v. THE STATE.
(342 SE2d 765)

BEASLEY, Judge.

On September 14 and 25, 1984, at his trailer home, Ingram sold cocaine to a GBI undercover agent. On the 27th, at the same place, Ingram gave cocaine to the agent without receiving any money in return. While the agent was still on the premises, local and state law enforcement officers executed a search warrant at the residence and seized a number of items, including cocaine, marijuana, scales, strainers, and a police band radio scanner.

A jury found Ingram guilty of two counts of the sale of cocaine, one count of distribution of cocaine, one count of possession of cocaine, and one misdemeanor violation for the possession of less than an ounce of marijuana. Ga. Controlled Substances Act, OCGA § 16-13-30.

1. The state's first witness was a GBI agent who was involved in the execution of the search warrant. After establishing his background as a GBI agent for approximately thirteen years, who was then in charge of narcotics investigation for the region and "had made" hundreds of drug cases, the state elicited the specific circumstances of the search including description and identification of the items that had been seized. One of the items was "a scanner with police crystals or police frequencies on it." He identified the scanner as an exhibit and the state then asked: "In your experience with the Georgia Bureau of Investigation, is there any significance you attach to a scanner being in a . . ." The agent responded: "Yes, sir," and counsel objected on the ground that the question called for a conclusion. The court overruled the objection, reasoning that it sought an opinion which the experienced agent was qualified to give.

Then followed: "Q. [by state] Does that scanner have any special significance to you as a Georgia Bureau of Investigation Special Agent involved in drug investigation? A. [by agent] Yes, sir. When it's found in connection with these other items, it's used for the purpose of trying to keep track of police activity and track— in an effort to possibly head off any investigation in which they would be involved. Q. Are you saying someone listens out for the police on there . . . A. That's it, yes, sir. Q. . . . monitors their activity? A. Yes, sir."

Later, the same witness was asked what the question, "Can I get some smoke?" meant to him in the context of his being a special agent of the GBI with the experience heretofore related. Whether the term "smoke" had any special meaning in the parlance of the drug business and culture was at issue. The court overruled the similar objection that it called for a conclusion, and the witness testified that the question meant "Can we get some marijuana."

Ingram enumerates as errors the allowance of these two portions of testimony as opinion because it invaded the province of the jury.

The opinions of experts may be given. OCGA § 24-9-67. Although the state did not expressly ask as it should have,[1] after laying the foundation, that the court deem the agent qualified to testify as an expert in drug business methods and language interpretation, the evidence of the agent's training and vast experience upon which knowledge was based were sufficient to qualify him as an expert on these matters. It is clear from the transcript that the court determined the agent to be an expert witness, which is initially within the court's province. *Clary v. State*, 8 Ga. App. 92 (2) (68 SE 615) (1910). Once so established, it was within the discretion of the trial court to allow the agent's statements regarding the scanner and the meaning of "smoke," even if the statements were conclusory. The final analysis is of course up to the jury. We find no abuse in the trial court's exercise of its discretion in this regard. *Hicks v. State*, 157 Ga. App. 79, 80 (2) (276 SE2d 129) (1981).

2. Execution of the search warrant took more than an hour, and the phone rang continuously from the time the officers entered until they left. A number of calls were answered by an agent, but many were left to ring and finally the phone was taken off the hook because it was interfering with the agents' work. Ingram asserts that the trial court erred in permitting the GBI agent to testify, over objection that the testimony was hearsay, about the substance of a conversation with a woman who telephoned and who was not present as a witness. He does not complain on appeal about testimony as to the agent's

---

[1] Then all parties and the jury would know the character of the testimony, and also, when the charge on expert opinion was given regarding its legal ramifications, there would be no mistake about what evidence the charge referred to.

side of the conversation, but only as to what the telephoning party said, claiming it was inadmissible hearsay.

Inasmuch as "[h]earsay evidence is that which does not derive its value solely from the credit of the witness (here the agent) but rests mainly on the veracity and competency of other persons, (hear the caller)" it "is admitted only in specified cases from necessity." OCGA § 24-3-1. " ' "The chief reasons for the exclusion of hearsay evidence are the want of a sanction of an oath, and of any opportunity to cross-examine the witness." ' " *Bennett v. State*, 49 Ga. App. 804, 808 (5) (176 SE 148) (1934). But there are exceptions to the hearsay rule. See, e.g., OCGA §§ 24-3-3 through 24-3-15. " 'The two underlying reasons for any exception to the hearsay rule are a necessity for the exception *and a circumstantial guaranty of the trustworthiness of the offered evidence — that is, there must be something present which the law considers a substitute for the oath of the declarant and his cross-examination by the party against whom the hearsay is offered.' "* *Gale v. State*, 138 Ga. App. 261, 263 (3) (226 SE2d 264) (1976).

Were there factors here to justify the admission into evidence of the caller's side of the conversation, which defendant did not hear? That is, was there something to provide that degree of minimal reliability to the witness agent's testimony and necessity of the information as a matter of law so that the jury could properly consider it in determining the facts of the case?

To begin with, the defendant was an active participant in the conversation. It was a three-way exchange with the agent relaying defendant's message to the caller as well as relaying the caller's words to the defendant. Second, at the time of the conversation, the defendant did not challenge the truthfulness of the agent's report but rather responded to the inquiry reportedly made and relied upon it in affirmatively answering. In addition, he did not seem surprised by its nature. Third, the reliability of the relay is further reinforced by the spontaneity of it. It was randomly answered. It was not a call made by or arranged by the agent or other law enforcement officer. In fact, there was evidence that the calls at defendant's residence interfered with and interrupted and so delayed the agents' execution of the search warrant. Fourth, there was little time for fabrication as it was immediately relayed straight to defendant on the spot, and in addition there was a high risk that defendant would know it was fabricated. Finally, to further ensure the trustworthiness of what the caller said, the defendant had the opportunity to testify regarding the circumstances of the conversation and though his version of what transpired was somewhat at variance with that related by the agent, he clearly testified that he was not denying the conversation as the agent related it at trial. We therefore see no reason to exclude it.

Other courts have considered out-of-court statements in the con-

text of a three-way spontaneous conversation to be admissible as part of the res gestae. See, e.g., *Washington v. State*, 118 S2d 650 (Fla. Dist. Ct. App., 1960). The peculiarities of the circumstances of the conversation at issue would properly place it within a res gestae exception to the hearsay prohibition. OCGA § 24-3-3. See *Wallace v. State*, 151 Ga. App. 171, 173 (259 SE2d 172) (1979).

Also, the caller's words were necessary evidence as they served to identify Ingram as the drug dealer and to demonstrate this modus operandi. See *Teems v. State*, 161 Ga. App. 339, 340 (1) (287 SE2d 774) (1982), where the substance of a telephone conversation was admitted as original evidence under Code Ann. § 38-302, now OCGA § 24-3-2.

Based on the foregoing, the trial court's determination to admit the evidence was not error.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MARCH 17, 1986.

*Reginald L. Bellury*, for appellant.

*Joseph H. Briley, District Attorney, Shane M. Geeter, Assistant District Attorney*, for appellee.