## 74713. VERHOEFF v. THE STATE.
### (362 SE2d 85)

McMURRAY, Presiding Judge.

On May 8, 1986, defendant arrived at Hartsfield International Airport in Atlanta, Georgia, aboard a flight which originated in Miami, Florida. Defendant was on his way to Holly, Colorado and it was necessary for him to change planes in Atlanta. Because defendant's flight originated in a known drug source city, deplaning passengers were monitored by agents of the Drug Enforcement Administration ("DEA").

Defendant deplaned, carrying a small suitcase with a shoulder strap. He walked into the concourse, looking somewhat confused. An air line agent offered to help and defendant handed him his plane ticket. After examining the ticket, the air line agent directed defendant to another gate for his connecting flight. During this exchange, Special Agent Paul Markonni of the DEA spied defendant's ticket. He was able to observe that it was a one-way cash ticket bearing the name "Bryan Clark." He also was able to observe that no baggage claim stubs were attached to the ticket folder. Checking the reservation record, Markonni learned that defendant's reservation was made about one hour before his flight was scheduled to depart and that a telephone contact number was not given. Armed with this information, Markonni decided to interview defendant.

Accompanied by DEA Agent Laderer, Markonni intercepted defendant and identified himself as a police officer. Markonni and Laderer were dressed in casual clothing; their weapons were not displayed. Markonni asked defendant if he could speak with him for a few minutes and defendant said that he could. Markonni then asked to see defendant's plane ticket and defendant handed it to him. Holding the ticket, Markonni asked defendant his name. According to Markonni, defendant "appeared to hesitate and then actually looked over in the direction of the ticket, like he forgot what name was on it,

and he said Clark. And, I said, what's your first name, Mr. Clark, and he said Bryan." At that point, Markonni gave the ticket back to defendant. Speaking in normal conversational tones, Markonni asked defendant if he had any identification. Defendant replied that he did not have any with him. Markonni inquired as to whether defendant had anything with his name on it — a credit card or a receipt of some kind. Defendant said he did not and he asked what was going on. Markonni informed defendant that he and Laderer were narcotics agents and that they were looking for drugs and narcotics coming through the airport. Markonni asked defendant again whether he had "anything at all" with his name on it. Defendant "kind of stuttered and then said, yes, and produced his wallet, and from his wallet he produced his Colorado driver's license which had his true name on it."

In the meantime, Markonni observed that defendant was extremely nervous during the interview. In Markonni's words, defendant "fell apart when we started talking to him." Defendant's breathing quickened dramatically and his hands shook.

Markonni returned defendant's driver's license to him. He then asked defendant if he would give his consent to be searched. Defendant declined. Convinced that defendant was not truthful about his identity in order to mislead him, Markonni arrested defendant for giving a false name to a law enforcement officer. See OCGA § 16-10-25. Thereupon, Markonni conducted a search of defendant incident to the arrest. Cocaine was found in the suitcase which defendant was carrying.

Defendant was indicted for trafficking in cocaine and giving a false name to a law enforcement officer. He moved to suppress the evidence which was seized during the search. The motion was denied. Following a bench trial, defendant was convicted upon both counts of the indictment. On appeal, defendant enumerates error upon the denial of the motion to suppress evidence. *Held*:

1. When defendant gave Markonni his driver's license with his name on it, Markonni had probable cause to believe that defendant had given Markonni (who is a Clayton County deputy sheriff in addition to being a DEA agent) a false name in order to mislead him. Thus, Markonni was entitled to arrest defendant and to conduct a search incident to the arrest. *United States v. Ehlebracht*, 693 F2d 333, 338 [2] (5th Cir. 1982). It follows that the drugs found pursuant to the search were admissible in evidence.

2. Defendant contends that he was seized by Markonni at the outset and that, therefore, the arrest (and incidental discovery of cocaine) was tainted by the seizure. In this regard, defendant argues that Markonni's repeated requests for identification demonstrate that defendant was seized even before he produced his driver's license.

"In determining whether a given contact between a police officer and a citizen violated a defendant's Fourth Amendment rights, the court must first determine whether the encounter was a 'seizure' within the meaning of the Fourth Amendment. See *United States v. Mendenhall*, 446 U. S. 544, 553 (100 SC 1870, 1876, 64 LE2d 497) (1980) (Stewart, J.) (with Rehnquist, J., concurring). The Fourth Amendment's proscription against unreasonable searches and seizures governs all seizures of the person, 'including seizures that involve only a brief detention short of traditional arrest. *Davis v. Mississippi*, 394 U. S. 721 (89 SC 1394, 22 LE2d 676) (1969); *Terry v. Ohio*, 392 U. S. 1, 16-19 (88 SC 1868, 20 LE2d 889) (1968).' *United States v. Brignoni-Ponce*, 422 U. S. 873, 878 (95 SC 2574, 45 LE2d 607). 'The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." (Cit.)' *United States v. Mendenhall*, supra at 553-554. In distinguishing between an intrusion amounting to a 'seizure' of the person and an encounter that intrudes upon no constitutionally protected interest, we adopt that standard proposed by Justice Stewart in *United States v. Mendenhall*, supra at 554: '(A) person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Moran v. State*, 170 Ga. App. 837, 839 (1) (318 SE2d 716).

Theoretically, there are at least three kinds of police-citizen encounters: verbal encounters involving no coercion or detention; brief "stops" or "seizures" which must be accompanied by a reasonable suspicion; and "arrests" which must be supported by probable cause. *McAdoo v. State*, 164 Ga. App. 23, 26 (295 SE2d 114), citing *United States v. Berry*, 670 F2d 583, 591 (5th Cir. 1982). "Factors determinative of whether or not an intrusion or 'seizure' has occurred 'include the lack of interference with the individual's progress, ascertaining whether the individual is willing to cooperate with police before making further inquiries, no display of official authority beyond a statement that the person stopping the individual is a law enforcement officer, and conducting the encounter in an appropriately deferential manner to avoid causing the individual . . . anxiety and fear . . .' *McAdoo v. State*, supra at 26, 27." *Allen v. State*, 172 Ga. App. 663, 665 (324 SE2d 521).

We think the facts demonstrate that defendant was not seized until he was arrested formally. Markonni and Laderer were dressed casually and their weapons were not displayed. When defendant was approached, the agents were identified as law enforcement officers and defendant was asked if he would speak with the agents for a few

minutes. Markonni asked to see defendant's plane ticket. After examining the ticket Markonni gave it back to defendant. Then Markonni asked to see identification. When defendant said he did not have any with him, Markonni asked if he had anything with his name on it. Receiving a negative reply, Markonni asked again for identification and defendant produced it. Markonni did not demand to see identification; he simply repeated his requests for identification in a conversational tone of voice. Defendant responded to the requests by saying he did not have identification with him. At no time did defendant refuse to produce identification.

Given these facts, it appears that defendant had no objective reason to believe that he was not free to end the conversation with Markonni and proceed on his way. It follows that defendant was not seized during his conversation with Agent Markonni. *Allen v. State*, 172 Ga. App. 663, 664 (1), 665, supra.

*Judgment affirmed. Sognier and Beasley, JJ., concur.*

DECIDED SEPTEMBER 30, 1987 —
REHEARING DENIED OCTOBER 14, 1987 —

Bruce H. Morris, for appellant.
Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney, for appellee.