## 76054. YOUNG v. THE STATE.
(369 SE2d 772)

BIRDSONG, Chief Judge.

Appellant Ernest Michon Young was convicted of possession of less than an ounce of marijuana and of trafficking in cocaine, in an amount proved to be 881 (eight hundred eighty-one) grams cocaine hydrochloride with a purity level of 91 percent. The cocaine was found in a Louis Vuitton bag on the baggage carousel at the Atlanta airport, which bag was searched after appellant disavowed ownership of it, and in which was also found an item bearing his fingerprint.

In his sole enumeration of error on appeal, appellant contends that his encounter with Drug Enforcement Agency agents which led to the search of the bag and to his subsequent arrest, exceeded the constitutional bounds of a permissible stop and investigation under

*United States v. Mendenhall*, 446 U. S. 544 (100 SC 1870, 64 LE2d 497) and, therefore, that the search and the arrest were illegal. *Held*:

The evidence adduced at the hearing on appellant's motion to suppress, shows that at all times during the "encounter" between appellant and agents Noe, Lalumiere and Markonni, the appellant was asked to cooperate, and he agreed to cooperate, and that he was made to understand that he was not required to cooperate; and he was, in fact, free to go at any time.

Appellant's "drug-profile" conduct attracted the attention of DEA Agent Noe who was monitoring a flight from Miami to Atlanta on February 2, 1987. Agents Lalumiere and Noe, who wore casual clothes and carried no weapon, ultimately approached appellant on the airport concourse in an open gate area where appellant had sat. Agent Noe said, "I'm a police officer, may I talk to you?" Appellant said, "Yes, I knew you were a cop. I noticed you was [sic] watching me." Noe asked to see appellant's airplane ticket, and when appellant produced it, Noe noticed it was a cash ticket issued in the name of Ernest Young. Enclosed in the envelope was a loose, not stapled, baggage claim check. Agent Noe then asked to see identification and was shown a south Florida carpenter's union card with a photo, in the name Ernest Young. However, when Agent Noe asked him if he had any other identification, such as a driver's license, appellant said "no." Agent Noe said, "Can I ask the nature of your travel?" Appellant responded that he had come on vacation to visit his sister.

Agent Noe then said to appellant, "We're narcotics agents looking for illegal drugs trafficking through the airport, and I'd like to ask you for your cooperation by allowing us to search you and your luggage." Appellant said, "Okay." Agent Noe said, "We can do it here or . . . go to a private area"; appellant just turned and started walking towards the area where Agent Noe was pointing. Agent Noe produced a consent-to-search card and read it to appellant; the last line said, "Do you understand?" Appellant said, "You mean I don't have to do this if I don't want to?" Agent Noe replied, "No, but we're asking for your cooperation." Again, appellant said, "You mean I don't have to do this, I don't have to agree to a search?" Agent Noe replied, "No, you don't. We're asking for you to help us out by cooperating. It won't take but . . . a few minutes." Then Agent Noe asked, "Do you have anything on you that you're worried about?" Appellant said, "No, I don't have anything. See"; and he began to very nervously pat himself down. Agent Noe said, "It's okay to pat you down real quick?" The appellant said "yes," and allowed Agent Noe to do so. Seeing appellant's "extreme nervousness," Noe said, "I noticed you've got a checked bag," and asked appellant whether it was okay if the agents walked with appellant to the baggage claim area and searched that bag. Appellant said, "Yes, but I need to use the phone first."

Agent Noe agreed.

Appellant then went to use the telephone 20-25 feet away. Neither of the agents followed appellant to the phone. Agent Noe went to a Delta flight agent and checked appellant's reservation record, and finding that he had made a one-way reservation late the night before, Noe contacted Agent Markonni for help.

Appellant then returned from the telephone to where the agents were waiting, and said, "I have to go to the rest room first," or asked Agent Noe if he could go to the rest room. Noe said, "Sure, you can do anything you want to."

Appellant then went alone into the rest room and remained a "good five or ten minutes."

When he returned from the rest room, appellant and the agents went to the baggage claim carousel. It became evident that his baggage claim ticket could not be found. After appellant had checked all his pockets and looked in the ticket envelope and said he could not find the claim ticket, he zipped open a black bag as if it might be his, but said, "This one isn't my bag."

At that time, Agent Markonni told Agent Noe that there was only one unclaimed bag from Flight 839, a Louis Vuitton garment bag. Appellant disavowed ownership of the bag, and of anything in it, and any knowledge of who owned it. Agent Markonni asked appellant, "Do you care if I search this bag?" Appellant said, "No." Therefore, the bag was searched, and cocaine was found in it. On the basis of his suspicious behavior and all of the circumstances described above culminating in the discovery of cocaine in the one remaining bag, appellant was then formally arrested. We hold the arrest was made with probable cause to believe the bag was his or he was directly connected to it.

Appellant urges that this entire encounter between appellant and the agents crosses the fine distinction of coercion the police may use in an airport stop; that there was no showing of reasonable suspicion authorizing the original stop, and urges us to examine the "nuance and tone" of the officer's requests and distinguish between appellant's "acquiescence to a demand" as opposed to "consent," so as to closely scrutinize whether these circumstances reveal the presence of any coercion that would render the search of the bag and the arrest invalid.

We have closely scrutinized the evidence in this case, as appellant urges us to do, and we determine, in line with the principles repeated in *Verhoeff v. State*, 184 Ga. App. 501, 503 (362 SE2d 85), that the verbal encounters here involved no coercion or detention, but only requests for cooperation. Appellant was *in fact* free to leave, as evidenced by his trips alone to the rest room and telephone. As in *Verhoeff*, the facts demonstrate appellant was not seized or restrained until he was arrested, which was *after* the lone remaining luggage was

found to contain cocaine, and *after* this bag was connected to appellant who had previously had a claim ticket but had "lost" it. As for the search of the Louis Vuitton bag, no complaint can be made by appellant of that search, since he had said the bag was not his.

We conclude the stop and investigation of appellant were not intrusive or coercive in violation of the Fourth Amendment according to anything said in *United States v. Mendenhall*, supra; the search of the bag was perfectly valid; and the subsequent arrest of appellant was clearly based on probable cause.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED APRIL 27, 1988 —
REHEARING DENIED MAY 16, 1988 —

*Frank J. Petrella*, for appellant.

*Robert E. Keller, District Attorney, Daniel J. Cahill, Jr., Todd E. Naugle, Assistant District Attorneys*, for appellee.