## 77426. DONNER v. THE STATE.
### (380 SE2d 732)

POPE, Judge.

Defendant Donner appeals his conviction of the offense of trafficking in marijuana. The sole enumeration of error raises the denial of a motion to suppress evidence found during the search of an automobile occupied by defendant.

The record shows that in the early morning hours of November 26, 1987, Georgia State Patrol Trooper Ralston received a request to check the rest area on northbound Interstate 75 near Adairsville, Georgia for a vehicle unconnected with the case sub judice. The trooper drove through the rest area and did not find the vehicle he was looking for but did find defendant sleeping in the back seat of a 1984 Oldsmobile Delta 88. The trooper woke defendant and inspected defendant's driver's license and automobile registration. The automobile was registered to Roger Bonner. When defendant was questioned about the vehicle's owner he became "very nervous" and gave conflicting answers, first identifying the owner as his friend and then stating that the owner was a friend of his brother. Defendant did not know how to contact the owner. In response to the trooper's queries, defendant stated he was a truck driver working part time and that he had been to West Palm Beach, Florida to sell a "time share."

Trooper Ralston first approached the vehicle in which defendant was sleeping at 2:06 a.m. At approximately 2:12 or 2:15 a.m. Trooper

Ralston contacted a State Patrol radio operator to run a check on defendant's driver's license and the vehicle registration. He also instructed the radio operator to telephone defendant's wife in Illinois. The radio operator reached defendant's wife by telephone, informed her he was with the Georgia State Patrol, that defendant had been stopped in a routine traffic stop, that defendant had not been in an accident and asked her to answer some questions about defendant. Trooper Ralston instructed the radio operator as to the questions to be asked and the operator put defendant's wife on hold while he transmitted her answers to the trooper. Through this inquiry Trooper Ralston verified some of the information given to him by defendant and learned that defendant and his wife had been having marital problems, that she had not seen him for three days and that she did not know his whereabouts or what type of vehicle he was in.

Defendant's wife was upset and crying by the end of her conversation with the radio operator. Following the radio exchange, Trooper Ralston returned to the vehicle occupied by defendant, gave defendant his driver's license and automobile registration and issued defendant a warning for sleeping in the rest area. Although Trooper Ralston was under the impression that a regulation of the Georgia Department of Transportation prohibited sleeping in rest areas, no such regulation existed. The trooper then requested permission to search the vehicle. (The time was 2:26 a.m.) Defendant refused permission for a search and Trooper Ralston's request to travel approximately 20 miles up the road to allow a drug dog to sniff around the automobile.

Trooper Ralston advised defendant that he would be detained until the trooper could make an attempt to contact the owner of the vehicle, Roger Bonner. (The time was 2:28 a.m.) The trooper instructed the radio operator to telephone Bonner but was advised that there was no answer at the telephone number listed for Bonner.

Finally, at 2:40 a.m., thirty-four minutes after the trooper first approached defendant, he was told he was free to go. Defendant got back in the automobile and the trooper got back in his vehicle and parked nearby. Approximately five minutes later defendant exited the automobile, walked over to the trooper's vehicle and told the trooper: "Well, since you have called my wife, we have been having marital problems and she has been ill, I'm going to go make a telephone call to her." Trooper Ralston advised defendant: "Whatever you wish to do, you are free to go." The defendant then went to the concession area at the rest area and used the telephone.

Prior to telling defendant he was free to go (sometime in the interval between 2:28 a.m. and 2:40 a.m.), Trooper Ralston had requested, by radio, that a drug dog be brought to the rest area. Trooper Ralston testified that he remained at the rest area to see if the drug dog would arrive before defendant left. Defendant was still

using the telephone when the drug dog arrived at 3:50 a.m. The drug dog was used to sniff twelve to fifteen other vehicles parked in the rest area before the dog "alerted" to the trunk of the automobile in defendant's possession. A subsequent search revealed a large quantity of marijuana in the trunk of the automobile.

Defendant argues the contraband was found as the fruits of an illegal search because he was detained illegally and without probable cause. Even if the officer's thirty-four minute detention of the defendant, while investigating the ownership of the automobile defendant was driving, was unreasonable, the defendant was advised he was free to leave one hour and ten minutes before the drug dog arrived to sniff his car. Defendant claims he was on the telephone with his wife during this period. The record shows the radio dispatcher, at the officer's request, dialed the wife's telephone number while defendant was on the rest area telephone and discovered that her line was not busy. Even if the defendant was on the telephone with his wife, this fact does not establish that defendant's presence at the rest area at the time the dog arrived was in any way related to, much less a necessary result of, his earlier detention by the officer. The record shows defendant had not been in touch with his wife in three days. If defendant felt compelled to telephone his wife to explain the officer's earlier telephone call, he was not required to telephone her from the rest area. He was expressly told he was free to go and could have traveled to any other public telephone or to a private place of business to contact his wife.

At the time the drug dog "alerted" to the trunk of the vehicle he was driving, defendant had been free from restraint or detention for one hour and ten minutes. Defendant was in control of his own movements and voluntarily chose to leave his vehicle parked in a public area subject to detection by any police authority of any scents or smells emanating from it without the necessity of a search warrant. See *United States v. Dicesare*, 765 F2d 890 (9th Cir. 1985), amended 777 F2d 543. The officer was merely practicing good police work to use the resource of a drug dog to investigate the vehicle defendant had voluntarily left in the parking area. Once the drug dog "alerted" to defendant's car, probable cause was established to conduct the search. Thus, the trial court did not err in denying the motion to suppress evidence found during the search and the conviction is affirmed.

*Judgment affirmed. Carley, C. J., Deen, P. J., Banke, P. J., Birdsong, Benham and Beasley, JJ., concur. McMurray, P. J., and Sognier, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

The trial court determined that there had been no invasion of defendant's Fourth Amendment rights and denied defendant's mo-

tion to suppress. As an alternative ground for denial of the motion to suppress, the trial court concluded that even if there had been an illegal seizure there were sufficient intervening circumstances between the seizure and the appearance of probable cause to attenuate any taint of such illegal seizure.

In its analysis of the circumstances at issue, the trial court recognized that the warning citation issued to defendant was illegal. Since there was no statutory or regulatory prohibition against defendant's sleeping in the automobile, the trooper's intent to issue the warning afforded no basis for a seizure of defendant. However, the trial court found an independent basis for the trooper's conduct, to check the sleeping man for safety purposes. We should not accept this analysis. Any "safety" purpose in approaching defendant dissolved when the trooper tapped on the window of the automobile and defendant awakened. Thus, we should reach the question of whether defendant was seized illegally when the trooper requested defendant's driver's license and the vehicle registration.

" 'In determining whether a given contact between a police officer and a citizen violated a defendant's Fourth Amendment rights, the court must first determine whether the encounter was a "seizure" within the meaning of the Fourth Amendment. See *United States v. Mendenhall*, 446 U. S. 544, 553 (100 SC 1870, 1876, 64 LE2d 497) (1980) (Stewart, J.) (with Rehnquist, J., concurring). The Fourth Amendment's proscription against unreasonable searches and seizures governs all seizures of the person, "including seizures that involve only a brief detention short of traditional arrest. *Davis v. Mississippi*, 394 U. S. 721 (89 SC 1394, 22 LE2d 676) (1969); *Terry v. Ohio*, 392 U. S. 1, 16-19 (88 SC 1868, 20 LE2d 889) (1968)." *United States v. Brignoni-Ponce*, 422 U. S. 873, 878 (95 SC 2574, 45 LE2d 607): "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' [Cit.]" *United States v. Mendenhall*, supra at 553-554. In distinguishing between an intrusion amounting to a "seizure" of the person and an encounter that intrudes upon no constitutionally protected interest, we adopt that standard proposed by Justice Stewart in *United States v. Mendenhall*, supra at 554: "(A) person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Moran v. State*, 170 Ga. App. 837, 839 (1), 840 (318 SE2d 716).

"Theoretically, there are at least three kinds of police-citizen encounters: verbal encounters involving no coercion or detention; brief 'stops' or 'seizures' which must be accompanied by a reasonable suspi-

cion; and 'arrests' which must be supported by probable cause. *McAdoo v. State*, 164 Ga. App. 23, 26 (295 SE2d 114), citing *United States v. Berry*, 670 F2d 583, 591 (5th Cir. 1982). 'Factors determinative of whether or not an intrusion or "seizure" has occurred "include the lack of interference with the individual's progress, ascertaining whether the individual is willing to cooperate with police before making further inquiries, no display of official authority beyond a statement that the person stopping the individual is a law enforcement officer, and conducting the encounter in an appropriately deferential manner to avoid causing the individual . . . anxiety and fear . . ." *McAdoo v. State*, supra at 26, 27.' *Allen v. State*, 172 Ga. App. 663, 665 (324 SE2d 521)." *Verhoeff v. State*, 184 Ga. App. 501, 503 (362 SE2d 85).

I believe that the evidence permits only one conclusion, that defendant was seized when the trooper, after learning that defendant was physically well, continued his contact with defendant for investigatory purposes. It is incredulous to suggest that defendant, after being awakened in the middle of the night in an interstate highway rest stop by a uniformed (and thus presumably armed) state trooper could objectively perceive that he was free to drive away or otherwise ignore the trooper's request for his driver's license and the vehicle registration. Surrender of these documents was hardly consistent with any perception of freedom of movement. Here, the trooper could have, but did not, ascertain whether defendant was willing to cooperate before making further inquiries. In view of the trooper's testimony that he understood defendant to be in violation of a prohibition against sleeping in the rest stop so as to afford the trooper authority to "seize" defendant, one cannot reasonably infer, from a record silent in this regard, that the encounter was conducted in an appropriately deferential manner. I view the evidence as demanding a conclusion that the defendant's presentation of his driver's license and the vehicle registration was acquiescence to a display of authority rather than a gesture of voluntary cooperation with police.

Having determined that a seizure of defendant had occurred when the trooper requested the display of documents, I would hold that the seizure was not authorized by the information within the knowledge of the trooper at that time. Thus, I would review the issue addressed by the trial court's alternative reason for denying defendant's motion to suppress evidence. That is, whether the appearance of probable cause via the "alert" of the drug dog was tainted by the illegal seizure of defendant.

The trial court concluded that the intervening circumstance of letting defendant go at 2:40 a.m. was sufficient to attenuate the taint. As originated in *Wong Sun v. United States*, 371 U. S. 471 (83 SC 407, 9 LE2d 441), the inquiry is whether the appearance of probable

cause was obtained by "exploitation" of the illegality. While the term "exploitation" is not defined in *Wong Sun* a number of relevant factors have gained general acceptance. Those factors which are meaningful in the context of the case sub judice are temporal proximity, intervening circumstances, and the purpose and flagrancy of the official misconduct. *Brown v. State*, 188 Ga. App. 184, 187 (372 SE2d 514); *Tarwid v. State*, 184 Ga. App. 853 (363 SE2d 63).

In the case sub judice, there was slightly more than one hour between the termination of the illegal seizure and the "alert" by the drug dog. Most of this interval of time was consumed by defendant in a telephone call home to his wife whom he knew had been contacted by the Georgia State Patrol during the period in which he had been illegally seized. (The wife's telephone line had call-waiting service, therefore, no inference discrediting defendant's evidence as to the telephone call to his wife should arise from the radio dispatcher's failure to get a busy signal at her number during this interval. Additionally, the testimony presented by defendant as to the occurrence of his telephone call to his wife is corroborated by a telephone bill showing a 58 minute collect call from Adairsville during the appropriate period of time.) Whether the telephone call home was intended to relieve the emotional distress of defendant's wife, or of defendant himself, the communication can only be viewed as the natural conclusion of a sequence of events set in motion during Trooper Ralston's illegal seizure of defendant. Moreover, when viewed objectively the trooper's seizure of defendant had no arguable legal basis and was plainly effectuated for the sole purpose of conducting an inquiry about drug smuggling. Thus, it cannot be said that the causal link between the illegal seizure and the events which followed was severed when the trooper finally told defendant he was free to go. The State failed to carry its burden of showing that there was no exploitation of the illegal seizure of defendant.

I am concerned that the majority may have applied an incorrect burden of proof on the exploitation issue. The majority states that defendant's evidence "does not establish that defendant's presence at the rest area at the time the dog arrived was in any way related to, much less a necessary result of, his earlier detention by the officer." Since the burden of proof on the exploitation issue rests with the State, the correct inquiry is whether the State has proven that defendant's presence at the rest area when the dog arrived was not in any way related to the illegal seizure of defendant. This question is left unanswered by the majority's statement that defendant was not required to telephone his wife from the rest area and could have traveled to any other location to telephone his wife. The majority's statement also avoids the underlying fact that defendant's reasons for calling his wife were generated entirely by Trooper Ralston's conduct in

illegally seizing defendant and in precipitating the 2:00 a.m. telephone call to his wife. Apparently the majority views the causal link as broken when defendant was told he was free to go. Trooper Ralston did not resume his patrol, but waited nearby in the hope that the drug dog would arrive before defendant departed. Would Trooper Ralston have waited for or even have summoned the drug dog in the absence of the knowledge he gained during the illegal seizure of defendant? Again, I do not believe the State has carried its burden of proving that there was no exploitation of the illegal seizure of defendant.

The appearance of probable cause when the drug dog "alerted" was tainted by the illegality of the seizure of defendant. I would hold that the trial court erred in denying defendant's motion to suppress. *Brown v. State*, 188 Ga. App. 184, supra. As I would reverse defendant's conviction, I respectfully dissent.

I am authorized to state that Judge Sognier joins in this dissent.

DECIDED MARCH 10, 1989 —
REHEARING DENIED MARCH 28, 1989. — ▬▬▬▬▬▬

*Maloy, Sadow & Jenkins, James K. Jenkins, Cook & Palmour, Bobby Lee Cook*, for appellant.
*Darrell E. Wilson, District Attorney*, for appellee.