### A89A1417. BEAUBRUM v. THE STATE.
(387 SE2d 649)

BIRDSONG, Judge.

Locita Beaubrum appeals her conviction for trafficking in cocaine. She was sentenced to 25 years to serve and a fine of $500,000, and she now asserts that the trial court erred by denying her motion to suppress because she contends the evidence was obtained by illegal search and seizure. She alleges that she was arrested without probable cause, her seizure was not supported by reasonable suspicion or specific and articulable facts justifying the intrusion to her privacy, and that the search of her person was unlawful regardless whether her consent was obtained. *Held*:

At the hearing on appellant's motion to suppress, the only evidence presented was the testimony of Atlanta Police Officer Vicki Prattis. Officer Prattis testified that she was detailed to the Drug Enforcement Agency Task Force at the Hartsfield International Airport in Atlanta and, since Miami is a known drug source city, was watching passengers deplane from a flight which had recently arrived from Miami.

She noticed appellant because it was mid-May and warm, but appellant wore a denim jumper and a large wool plaid jacket. Appellant carried only a small tote bag. Prattis noticed that appellant kept pulling her jacket together and appeared to be trying to conceal something. Prattis also testified that she had experience with people who wore large or oversized clothing to conceal cocaine on their bodies. Because of this, she decided to interview appellant.

As she followed appellant, Prattis noticed that appellant and another passenger appeared to be making eye contact while trying to convey the appearance that they were not traveling together. She testified that this is also something that people do who are carrying drugs. With all this information, Prattis approached appellant, showed her badge and credentials, identified herself as a police officer, and asked if she could "speak with you a minute, please?" At this time, Prattis was dressed in casual clothes and was not showing her weapon.

Appellant agreed and Prattis asked to see her plane ticket. Appellant gave her the ticket and Prattis noted that it was a round trip ticket from Miami to Atlanta with the return five days later. The ticket showed that it had been paid for with cash, and there were no baggage claim checks attached or any indication that claim checks had been attached. Prattis asked for appellant's name and she gave

the name shown on the ticket. During this process, appellant appeared nervous, her voice cracking and her upper chest quivering.

Prattis returned the ticket and asked for identification. Appellant presented a tattered baptismal certificate which stated the name by which appellant had identified herself and which was on the plane ticket. Prattis, however, was not satisfied with this identification and asked appellant if she had any identification showing her photograph, but appellant said she did not.

Then Prattis advised appellant that she was a narcotics agent at the airport looking for drugs and drug proceeds. "And, I advised her that if she had some sort of picture identification or a credit card or something like that, there probably wouldn't be any problem but I asked her if she would like to cooperate with me for just a few moments and allow me to search her and her bag." Appellant replied, "search my bag, I don't have anything in there." After searching the bag and finding nothing of significance, Prattis asked, "now, do you mind if I pat you down." According to Prattis, appellant looked astonished and got even more nervous. Prattis told her, "well, like I said, we look for drugs coming through the airport, would you have a problem with me patting you down?" Appellant responded, "no, it's ok."

Prattis then patted her down and felt something under appellant's clothing which her experience suggested usually turned out to be cocaine. She then arrested appellant and took her to an office where she was searched. Two packets, which later tested positive as cocaine, were removed from under appellant's clothing.

Prattis testified that she first approached appellant in a public area, talked to her in a normal voice, did not touch appellant until she patted her down, and did not use threats, coercion or offer any hope of reward. She testified that appellant never attempted to leave.

Appellant did not testify at the hearing or present any evidence showing that she attempted to terminate the conversation or that she wanted to walk away. Further, she offered no evidence that contradicted Prattis' testimony.

Appellant argues that the procedures used by Prattis are inherently coercive and that there is no difference between this approach and being pulled over by the flashing blue lights of a patrol car. Thus, she argues that Prattis' testimony that she advised appellant that if she had any photo-identification there probably would not be a problem and then asked for appellant's consent to search, constituted a seizure of appellant at that time. She further argues that under the circumstances there was no objective reason for appellant to believe that she was free to walk away or end her conversation with Prattis. She contends, therefore, that she was seized before she consented to the search of her bag or her person, and that in any case her consent

at the hearing on the suppression motion " 'disclose a valid police-citizen encounter . . . .' " *Miller v. State*, 183 Ga. App. 55, 56 (357 SE2d 876). Thereafter, appellant consented to talk with Prattis and subsequently consented to the search of her bag and her person. Review of the transcript of the hearing shows no indication that appellant at any time expressed any desire to end the interview with Prattis or to object to the search. Under the circumstances, appellant was not seized until she was arrested. *Santone v. State*, 187 Ga. App. 789, 791 (371 SE2d 428); *Verhoeff v. State*, 184 Ga. App. 501, 503 (362 SE2d 85).

Moreover, we do not find persuasive appellant's argument regarding Prattis' comment that "there probably wouldn't be any problem" if appellant would produce identification showing her photograph. This comment was followed by a request for her to cooperate and a request for permission to search. "Given these facts, it appears that defendant had no objective reason to believe that [she] was not free to end the conversation . . . and proceed on [her] way." *Verhoeff v. State*, supra at 504.

Accordingly, there was no error in the trial court's denial of appellant's motion to suppress, and, thus her enumeration of error is without merit.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 2, 1989.

*John A. Beall, IV*, for appellant.
*Robert E. Keller, District Attorney, Clifford A. Sticher, Todd E. Naugle, Assistant District Attorneys*, for appellee.