## A91A0407. O'DONNELL v. THE STATE.
(409 SE2d 579)

BIRDSONG, Presiding Judge.

Frank Patrick O'Donnell appeals his conviction of the offense of trafficking in cocaine.

At approximately 1:00 a.m. on March 24, 1990, while conducting a routine patrol of the rest area on northbound Interstate 75 just south of Calhoun, Georgia, Georgia State Patrol Trooper, Michael J. Ralston, observed appellant's vehicle, a Ford Bronco with Illinois license plates, parked in the rest area. Trooper Ralston noticed the Bronco several more times throughout the early morning hours, always in the same parking place. At about 6:45 a.m. when Trooper Ralston returned to the rest area to assist a "deputy" on an unrelated matter, he again noticed the vehicle and decided to check on the occupant or occupants in the vehicle to determine their "well-being." Trooper Ralston looked in the window of the Bronco and observed appellant asleep in the rear seat of the vehicle. He tapped on the window until appellant sat up and rolled down the window, at which time Trooper Ralston explained that he wanted to be sure appellant was physically well because in the past there had been people who had heart attacks, became ill, or had carbon monoxide poisoning. After satisfying himself that appellant was all right, Trooper Ralston asked appellant if he would mind providing him with identification. After appellant provided Trooper Ralston with his Indiana driver's license, Trooper Ralston inquired if appellant owned the vehicle, and upon finding that he did not, requested to see the vehicle's registration. The registration showed that the vehicle was registered to Plaza Limousine Service in Chicago. Trooper Ralston explained to appellant that due to prior occurrences involving stolen vehicles, he would have to investigate further to determine whether appellant had lawful possession of the Bronco. Appellant told the trooper that the vehicle belonged to his friend Roger Sticken, the owner of Plaza Limousine Service, and that Sticken had allowed appellant to borrow the vehicle for a couple of weeks while on vacation. The trooper requested and appellant provided a number in Florida where Sticken could be reached. After Trooper Ralston repositioned his patrol car perpendicular to the rear of appellant's vehicle, but in a manner so appellant's vehicle could be backed out if needed, the trooper attempted to have his dispatcher reach the registered owner of the vehicle. When the dispatcher called the telephone number provided by appellant, Sticken was not home and only his answering machine responded. Because appellant did not know the number of Plaza Limousine Service in Chicago, Trooper Ralston had the dispatcher call Chicago telephone information for the number of the company; and, although the 1990 Yellow Pages for Chicago did have an advertisement for the company,

Trooper Ralston testified that the information operator was unable to find a listing for Plaza Limousine Service. The investigation continued for approximately 20 minutes during which time the trooper retained appellant's driver's license and the vehicle registration. While Trooper Ralston was waiting for the results of the check, he allowed appellant to use the rest room, although the transcript indicates the "deputy" who had remained in the rest area was asked to inform Ralston when appellant "came out" of the rest room so that appellant could not walk up behind Ralston undetected. Construing the evidence of record and drawing all reasonable inferences therefrom to support the verdict, it appears appellant was allowed to visit the rest room unaccompanied.

When appellant came back from the rest room, Trooper Ralston returned his license and the vehicle registration. Although appellant was not then informed that he was free to go, neither did he ever ask or attempt to leave the area. Appellant was asked for his consent to search the vehicle, which he agreed to verbally and in writing. Approximately 23 minutes had lapsed from the time Trooper Ralston first made contact with appellant until the time the consent form was presented and signed.

During the search, Trooper Ralston found 1,995 grams of cocaine in the left rear quarter panel of the vehicle. Appellant claims he had no knowledge of the cocaine. *Held*:

1. In considering the legality of a search, this court can consider all relevant evidence of record, including that adduced at the suppression hearing as well as at trial. *Jones v. State*, 187 Ga. App. 421, 422-423 (370 SE2d 784). We first consider appellant's argument that he was "seized" at the time Trooper Ralston requested and retained his license and vehicle registration after the trooper had ascertained that appellant was physically well. "In determining whether a given contact between a police officer and a citizen violated a defendant's Fourth Amendment rights, the court must first determine whether the encounter was a 'seizure' within the meaning of the Fourth Amendment. See *United States v. Mendenhall*, 446 U. S. 544, 553 (100 SC 1870, 1876, 64 LE2d 497) (1980) (Stewart, J.) (with Rehnquist, J., concurring). The Fourth Amendment's proscription against unreasonable searches and seizures governs all seizures of the person, 'including seizures that involve only a brief detention short of traditional arrest. *Davis v. Mississippi*, 394 U. S. 721 [89 SC 1394, 22 LE2d 676] (1969); *Terry v. Ohio*, 392 U. S. 1, 16-19 [88 SC 1868, 20 LE2d 889] (1968).' *United States v. Brignoni-Ponce*, 422 U. S. 873, 878 (95 SC 2574, 45 LE2d 607). 'The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of

individuals." (Cit.)' *United States v. Mendenhall,* supra at 553-554. In distinguishing between an intrusion amounting to a 'seizure' of the person and an encounter that intrudes upon no constitutionally protected interest, we adopt that standard proposed by Justice Stewart in *United States v. Mendenhall,* supra at 554: '(A) person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Moran v. State,* 170 Ga. App. 837, 839-840 (318 SE2d 716).

"In other words, the 'Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, brief "seizures" that must be supported by reasonable suspicion, and full-scale arrests that must be supported by probable cause. (Cits.)' [Cit.] Factors determinative of whether or not an intrusion or 'seizure' has occurred 'include [but is not limited to] the lack of interference with the individual's progress, ascertaining whether the individual is willing to cooperate with police before making further inquiries, no display of official authority beyond a statement that the person stopping the individual is a law enforcement officer, and conducting the encounter in an appropriately deferential manner to avoid causing the individual . . . anxiety and fear. . . .' [Cit.]" *Allen v. State,* 172 Ga. App. 663, 665 (324 SE2d 521).

In the present case, we conclude that the initial approach of Trooper Ralston to the vehicle and his subsequent inquiry as to the appellant's *well-being* did not constitute a Fourth Amendment seizure. At most there was a police-citizen verbal encounter involving no coercion or detention within the meaning of *Verhoeff v. State,* 184 Ga. App. 501, 503 (2) (362 SE2d 85).

*The record conclusively establishes that appellant was not initially stopped and detained by Trooper Ralston for any purpose whatever.* Appellant was stopped of his own volition, and was found lying in the back seat area of a parked car. Rather than detaining appellant in any fashion, Trooper Ralston merely approached the stationary appellant to inquire as to his physical well-being. After ascertaining appellant was not in the throes of a medical emergency, Trooper Ralston asked if appellant would "mind" presenting identification; appellant voluntarily cooperated by presenting his Indiana driver's license. We find that *under the attendant circumstances this routine-type traffic inquiry was not arbitrary, harassing, or coercive.* And considering appellant had voluntarily stopped in a public rest area, parked, and laid down in the vehicle late at night, causing Trooper Ralston to have a legitimate concern primarily regarding his medical status but also because signs prohibiting overnight parking in

the rest area apparently were being ignored, it was not *unreasonable* within the meaning of the Fourth Amendment for Trooper Ralston thereafter to initiate promptly a routine and limited inquiry to determine appellant's identity. In the case at bar, appellant was not detained and his movement impaired; rather, appellant was merely approached while voluntarily stopped and, after his safety was ascertained, appellant was asked routine identification questions in a minimally intrusive manner, which the record reflects he answered readily and without protest. In such circumstances, the validity of an officer's initiated investigative or protective conduct is determined in each case " '[b]y balancing the extent of the intrusion against the immediacy and importance of the interest in crime prevention or law enforcement which is sought to be advanced.' " See *Arena v. State*, 194 Ga. App. 883, 886 (1) (392 SE2d 264). We conclude Trooper Ralston's conduct in asking appellant if he would "mind" providing the routine information requested did not, under these circumstances, amount to an intrusion upon any constitutionally protected interest.

As a result of this brief and virtually unintrusive encounter, the vehicle was found not to be owned by appellant but based on the vehicle registration produced by appellant, registered to a limousine service in Chicago, Illinois. After hearing appellant's volunteered explanation as to how he came into possession of the vehicle, which included a claim that the vehicle had been loaned to him in Florida by his employer who was described as the owner of the Chicago-based limousine service, Trooper Ralston articulated a reasonable suspicion and need to "investigate further to determine if [appellant] did have legal possession of the vehicle." At this point appellant's continued investigation was lawful. For example, " '[a]n authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has *reasonable grounds* for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was *not* arbitrary or harassing.' " (Emphasis supplied.) *Eisenberger v. State*, 177 Ga. App. 673, 675 (340 SE2d 232). Thereafter, Trooper Ralston encountered a swiftly developing situation where he was not rapidly able to verify appellant's account of vehicle ownership; and, at this point, continued inquiry was required to maintain the status quo. Compare *Mallarino v. State*, 190 Ga. App. 398 (379 SE2d 210) (following a probable cause *stop* for a traffic violation, appellant was detained 33 minutes from time of stop to consent to search due to a rapidly developing situation requiring additional inquiry, citing *United States v. Hardy*, 855 F2d 753 (11th Cir.)) "It is recognized that no 'bright line' rule or 'rigid time limitations' can be imposed in determining whether detention of a person constitutes a mere investigative stop requiring only an articulable suspicion or an arrest requir-

ing the existence of probable cause at its inception. [Cits.]" *DiSanti v. State*, 190 Ga. App. 331, 334 (378 SE2d 729). While Trooper Ralston was awaiting information through his communications net, appellant went to the rest room, and within a minute or so of his return, he gave both written and oral permission to search.

" 'A valid consent eliminates the need for either probable cause or a search warrant.' " *Bobbitt v. State*, 195 Ga. App. 566, 567 (394 SE2d 385). Considering the totality of the circumstances, we find that at the time appellant gave this consent, he was not in a status of illegal arrest and accordingly, there was *no* taint of his consent to search within the meaning of *Lackey v. State*, 246 Ga. 331, 333 (271 SE2d 478).

Trooper Ralston testified that appellant was requested to consent to a search of the vehicle and that appellant readily consented both orally and in writing, although he subsequently objected temporarily to the search of his luggage and maintained an objection to the search of his billfold. Appellant, a college graduate with a Bachelor of Science degree, admitted in open court that he has taken a state ethics bar examination, has studied the law, knows about illegal search and seizure, and agreed to sign and did sign the consent to search form because he "did not know there was anything (drugs) in the vehicle." Under the totality of these circumstances, we find his consent was freely and voluntarily given; and, "[o]nce a voluntary consent is legally obtained, it continues until it either is revoked or withdrawn." *Mallarino*, supra at 403. Further, inherent within the denial of this suppression motion is the trial court's finding that appellant's consent to search was made voluntarily. *Calixte v. State*, 197 Ga. App. 723, 725 (399 SE2d 490). Assuming arguendo a question of credibility had existed regarding the voluntariness of the consent to search, "[i]nsofar as the trial court's ruling reflects a resolution of this question of credibility in favor of the State, we find no error as such is supported by the evidence." *Bobbitt*, supra.

In view of our determination, we need not decide whether appellant had standing to challenge the search of the vehicle when he claimed it had been loaned to him by a friend and that he had no knowledge of the drugs concealed within the quarter panel thereof. Compare *United States v. McBean*, 861 F2d 1570 (11th Cir.)

2. Appellant asserts the trial court erred by allowing the District Attorney's investigator to give his "guess" that a document found in appellant's possession and introduced in evidence "was 'the way people who are involved in the distribution of drugs keep records of who owes them money.' " Reviewing that portion of the trial transcript pertaining to this witness (*Ingram v. State*, 178 Ga. App. 292, 293 (1) (342 SE2d 765)), we find the witness was duly qualified and testified as an expert witness under OCGA § 24-9-67, which provides: "The

opinions of experts on any question of science, skill, *trade*, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." (Emphasis supplied.) The testimony of the investigator involved a question of "trade," particularly concerning the procedure used in the illegal drug distribution trade in keeping records of accounts due and owing. Although the witness did affirmatively acquiesce on cross-examination to the characterization that his opinion was based on a "guess," the record also reflects that the witness had based his answer on his experience as a criminal investigator who had collected and viewed evidence found in the possession of people involved in drug transactions in dozens if not hundreds of occasions. Moreover, it is not determinative of opinion admissibility that the expert witness was not called upon by the State to recite the facts on which his opinion is based. "When a witness is qualified as an expert, it is not necessary that he state the facts on which his opinion is based, but he may do so." *Braddy v. State*, 172 Ga. App. 386, 387 (1) (323 SE2d 219), aff'd *State v. Braddy*, 254 Ga. 366 (330 SE2d 338). And when, as here, a witness has been duly qualified as an expert witness, "it was within the discretion of the trial court to allow [in evidence the witness' statements that the document was commonly the way people involved in drug distribution keep records of who owes them money] even if the statements were conclusory." *Ingram*, supra at 293. It has not been shown that the trial court abused its discretion in admitting the expert witness' conclusory opinion in evidence.

*Judgment affirmed. McMurray, P. J., Banke, P. J., Pope, Beasley and Andrews, JJ., concur. Sognier, C. J., Carley and Cooper, JJ., dissent.*

COOPER, Judge, dissenting.

In the present case, I respectfully dissent from the majority because I conclude that although the initial approach of Trooper Ralston to the vehicle and his subsequent inquiry as to the appellant's well-being did not constitute a Fourth Amendment seizure, once the trooper ascertained that the appellant was physically well, the events following that initial questioning — the trooper's request for and retention of appellant's driver's license and vehicle registration without indicating that appellant could request their return; the trooper's involvement of the deputy trooper in the investigation; the repositioning of the patrol car perpendicular to appellant's vehicle — "transformed what may have been a consensual exchange into a situation in which ' "a reasonable person would have believed that he was not free to leave." ' [Cit.] These combined actions by the trooper went well beyond what an average citizen would expect from a vehicle 'safety check.' " *United States v. Jefferson*, 906 F2d 346, 350 (8th Cir. 1990).

See also *Schmidt v. State*, 188 Ga. App. 85, 87 (372 SE2d 440) (1988). I reject the majority's contention that appellant's compliance with the trooper's request for his driver's license and vehicle registration was a gesture of voluntary cooperation. The transcript is void of any testimony which would suggest that Trooper Ralston offered the appellant the opportunity to cooperate before the trooper began his investigation. Therefore, I conclude that appellant was seized for Fourth Amendment purposes when the trooper, after ascertaining the well-being of appellant, continued investigatory contact with appellant by requesting appellant's driver's license and vehicle registration.

Having determined that a seizure of appellant occurred, I further conclude that the seizure was not "justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. [Cits.]" *Evans v. State*, 183 Ga. App. 436 (2) (359 SE2d 174) (1987). The only basis presented at the suppression hearing for Trooper Ralston's decision to request identification from appellant and investigate further the ownership of the vehicle, was the trooper's belief that appellant manifested signs of nervousness, one of the general characteristics of a drug trafficker. I can find no testimony in the record which would provide an objective basis for Trooper Ralston's belief that the vehicle in which appellant was traveling was stolen or that appellant was engaged in other unlawful activity. The majority states that upon determining that the vehicle was not registered to appellant, Trooper Ralston had articulated a reasonable suspicion to investigate further. However, I feel that the seizure occurred at the time Trooper Ralston requested appellant's driver's license and registration, and therefore the reasonableness of that seizure must be determined by the information the trooper possessed at that time. That Trooper Ralston may have developed an articulable suspicion after the initial seizure is merely an "exploitation" of the illegality. See *Wong Sun v. United States*, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963). Under the circumstances present here, I determine that there was an insufficient factual or evidentiary basis to give rise to probable cause or an articulable suspicion to justify the seizure of appellant. See *Tarwid v. State*, 184 Ga. App. 853, 855 (363 SE2d 63) (1987); *DiSanti v. State*, supra at 334.

*Mallarino v. State*, 190 Ga. App. 398 (379 SE2d 210) (1989), cited by the majority is distinguishable from the present case because that case involved a stop incident to a traffic violation. This court concluded in *Mallarino* that Trooper Ralston's decision to detain the defendant was justified because the defendant had been driving in excess of the speed limit on the interstate, and the trooper was clearly authorized to investigate the traffic violation. My review of other decisions by this court which uphold detentions by Trooper Ralston, reveals that in each case, this court affirmed the trooper's decision to

seize the defendant because each seizure was incident to the investigation of an alleged traffic violation. See, e.g., *Lombardo v. State,* 187 Ga. App. 440 (370 SE2d 503) (1988) (speeding); *Partridge v. State,* 187 Ga. App. 325 (370 SE2d 173) (1988) (speeding); *Spencer v. State,* 186 Ga. App. 54 (366 SE2d 390) (1988) (weaving); *Whisnant v. State,* 185 Ga. App. 51 (363 SE2d 341) (1987) (speeding); *Steward v. State,* 182 Ga. App. 659 (356 SE2d 890) (1987) (speeding).

Further, I agree with appellant's contention that his voluntary consent to the search of the vehicle was tainted by the illegal stop and detention. "[I]n order to eliminate any taint from an involuntary seizure or arrest, there must be proof both that the consent was voluntary and that it was not the product of the illegal detention. Proof of a voluntary consent alone is not sufficient. The relevant factors include the temporal proximity of an illegal seizure and consent, intervening circumstances, and the purpose and flagrancy of the official misconduct. [Cits.]" *Brown v. State,* 188 Ga. App. 184, 187 (372 SE2d 514) (1988).

I find that there was not a significant lapse of time between the unlawful detention and the appellant's consent (approximately 23 minutes), that no intervening circumstances dissipated the effect of the unlawful detention (although his driver's license and the vehicle registration were returned to appellant after he came back from his trip to the rest room, appellant was never told that he was free to leave), and that Trooper Ralston's conduct had no arguable legal basis. Accord *Tarwid v. State,* supra at 856; *Brown v. State,* supra at 187. Compare, *Donner v. State,* 191 Ga. App. 58 (380 SE2d 732) (1989), where the taint of a questionable detention was attenuated by the defendant's voluntary decision to remain in the rest area for one hour and ten minutes after he was told that he was free to go. Accordingly, I dissent from the majority's opinion. I conclude instead that the trial court erred in denying defendant's motion to suppress evidence.

I am authorized to state that Chief Judge Sognier and Judge Carley join in this dissent.

DECIDED JULY 16, 1991 —
RECONSIDERATION DENIED JULY 31, 1991 —

*Cook & Palmour, Bobby Lee Cook, Bailey & Bearden, J. Lane Bearden,* for appellant.
*Darrell E. Wilson, District Attorney,* for appellee.