## A91A0538. GARCIA v. THE STATE.
(409 SE2d 683)

BEASLEY, Judge.

On appeal from his conviction of trafficking in cocaine, OCGA § 16-13-31, appellant contends that the trial court erred in denying his motion to suppress the contraband on which the prosecution was based.

As appellant was driving north on I-75, a state trooper observed him speeding and changing lanes without signaling. The trooper followed him as he was exiting into a rest area, signaled for him to pull over, and asked to see his driver's license and vehicle registration. Appellant produced an Illinois driver's license and registration document, and the trooper then radioed his dispatcher to request a records check. While waiting for the results, he prepared traffic citations charging appellant with speeding and improper lane change and questioned him and a female companion about the nature and purpose of their travel. According to the trooper, appellant responded that he was unemployed and that he and his companion were returning to Chicago from a vacation in central Florida. The trooper testified that appellant denied having been south of Orlando and Tampa during their trip, but his companion indicated that they had been to Miami. The trooper stated that this discrepancy, combined with appellant's "nervousness," his "being unemployed but yet being able to take a vacation to ride around for a week in Florida," and the fact that Miami and Chicago were "major [drug] distribution area[s]," caused the suspicion "that some crime was being committed."

At this time, the radio dispatcher informed the trooper that there was a warrant outstanding on appellant for trafficking in cocaine. The trooper immediately handcuffed appellant and placed him in the back of the patrol car. Appellant protested that he had committed no crime and that a mistake had been made. The trooper then asked the dispatcher for particulars "to verify" that appellant was in fact the person named in the warrant. Based on the description related to him by the dispatcher, the officer determined that appellant was not in fact the person named in the warrant. He released appellant from the patrol car, unhandcuffed him, "apologized for his inconvenience," returned his documents, and gave him the citations for speeding and improper lane change which he had earlier prepared.

The trooper testified that he considered appellant free to leave at this time although he did not tell him this. Rather, he asked him for permission to search his vehicle. Appellant responded by asking the trooper why he wanted to search the car, and the trooper replied "that we have had [a] problem, with weapons, large amounts of money and drugs being transported on the interstate." Appellant assured the trooper that he did not have any drugs in the car and asked

if he still wanted to search it. The trooper responded affirmatively, whereupon appellant asked what would happen if he refused. The trooper replied by asking: "Well, if you don't want me to search your vehicle, would you mind going up the road and letting a drug dog check your car?"

Appellant thereupon consented both orally and in writing to a search of his vehicle. The ensuing search disclosed cocaine on the rear floorboard of the vehicle, hidden inside some dirty laundry. A pistol, which was later determined to have been stolen, was seized from the companion's purse. Appellant testified that he had consented to the search only because he believed the trooper "was going to put the dogs on me" if he did not.

Appellant contends that his consent to the vehicle search must be considered the unlawful fruit of his "illegal" arrest on the outstanding warrant. It appears from the transcript that the information upon which the trooper based the arrest was the product of a records check predicated not merely on appellant's name but also on his date of birth and social security number. " '(W)hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.' " *Hill v. California*, 401 U. S. 797, 802 (91 SC 1106, 28 LE2d 484) (1971).

Appellant contends alternatively that his consent to search was not voluntary, but the record supports the trial court's finding otherwise.

"[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances. . . ." *Schneckloth v. Bustamonte*, 412 U. S. 218, 248-249 (93 SC 2041, 36 LE2d 854) (1973). Accord *Code v. State*, 234 Ga. 90, 93 (214 SE2d 873) (1975). "[T]he state['s] . . . burden of proving that the necessary consent . . . was freely and voluntarily given . . . is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U. S. 491, 497 (103 SC 1319, 75 LE2d 229) (1983).

On appeal, "the trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. Lego v. Twomey, 404 U. S. 477 (1972); . . ." *Woodruff v. State*, 233 Ga. 840, 844 (3) (213 SE2d 689) (1975).

The court explained at some length the basis of its finding, noting that it was regrettable that the police car had no video camera to videotape the conversation in this instance. The court heard testimony from the trooper and defendant and rejected defendant's ver-

sion as "incredible, some of the most incredible testimony that I've ever heard given."

The court considered significant that although defendant was born in Cuba, he had been in this country for over nine years, had two years of college studying medicine, was of such a mien that he later refused, in the environment of custody in a police station, to sign the form acknowledging that he had been advised of his rights under *Miranda* although earlier, standing on the side of the highway, he signed the consent to search form. This exhibited a degree of willpower to the court which was a factor in its finding of voluntary consent.

The consent form lists seven affirmations which the signer makes, some relating to facts about himself and some relating to rights of which "I . . . have been informed" prior to signing. Of particular import are the first three: "1. I have not been promised anything in exchange for consenting to this search. 2. I have not been threatened in any way to force or compel me to give this voluntary consent to search my vehicle. 3. I have the right to refuse the search of my vehicle."

The officer expressly "asked for permission to search the vehicle" after appellant was released from handcuffs and given his driver's license, car registration, and receipts for the traffic citations and court dates for appearance regarding the same. The short discussion between the officer and appellant about a search, which includes the officer's straightforward answers to appellant's questions, culminated in the officer's asking whether, if appellant objected to a search, he would mind a check of the car by a drug dog.

The trial judge, who viewed and heard the witnesses, was authorized to find that the consent was obtained in a nonthreatening way from a person who was informed, equipped to refuse it, free to refuse it, and chose to grant it. " 'Voluntariness must be determined from all of the circumstances.' " *Smith v. State*, 184 Ga. App. 304, 306 (1) (361 SE2d 215) (1987). The evidence supported the finding that the consent was voluntary " 'and not the result of duress or coercion, express or implied.' " Id.

*Judgment affirmed. Sognier, C. J., McMurray, P. J., Birdsong, P. J., Carley, Pope and Andrews, JJ., concur. Banke, P. J., and Cooper, J., dissent.*

BANKE, Presiding Judge, dissenting.

There is no question that the appellant signed a consent form; however, there is nothing in the trooper's testimony which would suggest that he did so "freely and voluntarily." At the time he was asked to consent to the search, the appellant had been released from handcuffed confinement inside the trooper's patrol car, but he had not

been informed that he was free to leave. Compare *Donner v. State*, 191 Ga. App. 58 (380 SE2d 732) (1989). His responses to the trooper's request, as recounted by the trooper himself, clearly manifested a reluctance on his part to give his consent. Under these circumstances, by asking the appellant if he would "mind going up the road and letting a drug dog check your car" in answer to his inquiry regarding what would happen if he refused to consent to the search, the trooper obviously was insinuating that this was his only other option, which is precisely how the appellant says he interpreted it. For these reasons, I would hold that the state failed to meet its burden under *Florida v. Royer*, 460 U. S. 491 (103 SC 1319, 75 LE2d 229) (1983), of showing that the appellant's consent "was in fact freely and voluntarily given," rather than the product of "mere submission to a claim of lawful authority." 460 U. S. at 497.

I am authorized to state that Judge Cooper joins in this dissent.

DECIDED JULY 16, 1991 —
RECONSIDERATION DENIED JULY 30, 1991 —

*Collins & Eddings, Michael R. Eddings, Bailey & Bearden, J. Lane Bearden*, for appellant.
*Darrell E. Wilson, District Attorney*, for appellee.